UNITED STATES of America, Appellee,

v.

Claude K. WEST, Defendant, Appellant.

No. 80–1727.

United States Court of Appeals,
First Circuit.

Reargued Oct. 4, 1983.

Decided Dec. 12, 1983.

Douglas K. Mansfield, with whom Thomas D. Edwards, and Casner, Edwards & Roseman, Boston, Mass., were on brief, for defendant, appellant.

William F. Weld, U.S. Atty., with whom John C. Doherty, Asst. U.S. Atty., Boston, Mass., was on brief, for appellee.

Before CAMPBELL, Chief Judge, GIBSON,* Senior Circuit Judge, and BOWNES, Circuit Judge.

LEVIN H. CAMPBELL, Chief Judge.

This case is on remand from the Supreme Court, —— U.S. ——, 103 S.Ct. 3528, 77 L.Ed.2d 1382, for reconsideration in light of *United States v. Place*, —— U.S. ——, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). In our earlier opinion, reported in 651 F.2d 71, affirming West's conviction on a narcotics charge, we upheld the temporary detention of West's suitcase in Boston by Drug Enforcement Agency (DEA) agents for purposes of conducting a sniff test by a detection dog. The dog alerted, cocaine was found, and West was subsequently convicted.

At the time we decided *West,* the Supreme Court had yet to pass on the constitutionality of detaining a traveler's luggage in such circumstances. The Court finally confronted the problem in *Place,* holding that luggage could be briefly held for sniffing by a detection dog if an officer's observations led him reasonably to believe the

* Of the Eighth Circuit, sitting by designation.

traveler was carrying narcotics in his luggage, and if the detention was properly limited in scope. Requiring luggage to undergo a sniff test was held not to amount to a "search" within the fourth amendment; rather the limitations applicable to *Terry*-type stops of the person were said to define the permissible scope of an investigative detention of luggage on less than probable cause. But while the *Place* Court ruled that luggage could be briefly detained for detection dog examination, it went on to hold that Place himself had been subjected to too lengthy and onerous an intrusion to meet the standards of *Terry*. The Court concluded "that the detention of respondent's [Place's] luggage . . . went beyond the narrow authority possessed by police to detain briefly luggage reasonably suspected to contain narcotics." *Place,* —— U.S. at ——, 103 S.Ct. at 2646, 77 L.Ed.2d at 123. The seized evidence was accordingly suppressed.

In the present case, the issue on remand is whether the detention of West's suitcase, like that of Place, was so intrusive as to exceed the officers' limited authority, as that authority has now been explained in *Place.*[1]

■ While this issue has been briefed and argued to us, we think, upon further consideration, that its resolution depends upon factual matters not sufficiently developed in the record and the findings below.

Because the record and findings are inadequate for us to decide the appropriateness under *Place* of the trial court's denial of the motion to suppress, we therefore remand to the district court for supplementation of the record. *Hodges v. Atlantic Coast Line R.R.,* 310 F.2d 438, 445 (5th Cir.1962); *United States v. Ueber,* 299 F.2d 310, 315 (6th Cir.1962). *See also* 28 U.S.C. § 2106. While we retain jurisdiction of this appeal, we pose particular questions on which the district court should take additional evidence, make appropriate findings and certify the results to this court as a supplemental record. *Camacho v. United States,* 392 F.2d 575, 576 (9th Cir.1968); *Cross v. Pasley,* 267 F.2d 824, 827 (8th Cir.1959).

The questions upon which we require further evidence and findings of fact relate to the expedition with which the officers conducted the canine search. The Supreme Court has said that a *Terry*-type detention must "be reasonably related in scope to the circumstances which justified the interference in the first place." 392 U.S. 1, at 20, 88 S.Ct. 1868 at 1879, 20 L.Ed.2d 889. Here the object of the "interference," as explained by the Court in *Place,* is "to arrange [the luggage's] exposure to a narcotics detection dog." —— U.S. at ——, 103 S.Ct. at 2644. It follows that the period of detention must afford time enough for officers to conduct a proper canine examination.[2] At the same time, *Place* makes it

---

1. The government at oral argument raised for the first time the contention that the officers actually had probable cause to search West. The district court in its memorandum and order denying West's motion to suppress stated that:

> The Government concedes, and we agree, that up to the time West's bag was sniffed by the specially trained dog, no probable cause existed to believe that the bag contained drugs or any other contraband.

Given this concession by the government at trial, the issue of probable cause cannot be resurrected on appeal. *See Johnston v. Holiday Inns, Inc.,* 595 F.2d 890, 894 (1st Cir.1979). Although we might consider the argument were it "so compelling as virtually to insure [the government's] success," *Dobb v. Baker,* 505 F.2d 1041, 1044 (1st Cir.1974), this is scarcely such a case. *See United States v. Place,* —— U.S. at —— n. 1, 103 S.Ct. at 2640 n. 1; *Florida v. Royer,* —— U.S. ——, ——, 103 S.Ct. 1319, 1328, 75 L.Ed.2d 229 (1983).

2. Dogs, unlike metal detectors, cannot be positioned all day throughout the airport. The amount of time which should reasonably have been allowed for a dog to be brought to sniff West's luggage involves inquiry into the practicalities of use of such dogs. It also involves some inquiry into the reasonableness of the agents' conduct in observing West covertly for some minutes after he arrived and only approaching him shortly before his Burlington flight was due to leave. This delay seems questionable in view of the emphasis in *Place* on a "brief" detention, but the government should have an opportunity to explain any valid investigatory or other reasons for such a practice. Especially as this is the first case to be decided in this circuit after *Place,* we believe the development of a full factual record oriented toward the *Place* standard will assist in the development of a reliable precedent.

very clear that "the brevity of the invasion ... is an important factor in determining whether the seizure is so minimally intrusive as to be justifiable on reasonable suspicion." —— U.S. at ——–——, 103 S.Ct. at 2645. Also important is "whether the police diligently pursue their investigation." —— U.S. at ——, 103 S.Ct. at 2645. Additionally relevant is the sufficiency of the information the agents give the suspect, in advance, concerning the time involved in the dispossession and the arrangements for return of the luggage if the investigation dispels suspicion. A court must balance the right of agents to have adequate time to conduct an efficient canine examination, against the right of the suspect to endure no more than a brief, diligently pursued and professionally managed detention of his luggage.

To enable us to resolve and weigh these matters, the parties should be permitted to explore and the court should make express findings upon the following questions: (1) the reasons the agents did not approach West until minutes before the scheduled departure of his 12:52 p.m. flight to Burlington, including proper law enforcement objectives, if any, served by their delay; (2) the reasons the agents did not have the detection dog on hand, or in the immediate vicinity, when West arrived from Florida, and any proper law enforcement purposes that those reasons served; (3) the time within which diligent officers stationed at a major airport like Logan can reasonably be expected to secure the presence of a detection dog after they first determine they need one; (4) the time which a properly conducted sniff examination will take from the moment the dog arrives until its completion; (5) whether there was sufficient time for the agents to have conducted a canine search so as to permit West's luggage to make the Burlington flight if they had summoned a dog directly upon the arrival of West's flight from Miami; (6) whether the agents' delay *after* West had boarded the Burlington flight in arranging

for the dog to sniff his luggage was justified and, in any event, whether the delay materially affected West; (7) the information provided in the receipt given to West and the arrangements made for return of his luggage, and whether such information was reasonable and appropriate; (8) any other factual findings and conclusions the district court deems material to determining whether the detention in question was constitutional under the standard announced in *Place.*

In making findings, the district court may, if it wishes, admit expert evidence on the practicalities involved in the use of detection dogs and the investigative techniques relevant thereto (*e.g.*, the desirability of a so-called "building search" [3] versus exposure of a piece of luggage directly to a detection dog), to assist in determining the standard of speed and dispatch to which agents should reasonably be held. While such practicalities and techniques will not necessarily determine whether a detention is constitutional, they should at least be understood before addressing the question. After findings are made based on its hearing, the district court should transmit them to this court, together with any observations which it deems relevant, and should also certify the supplemental record to this court. In the meantime this court retains appellate jurisdiction.

We therefore remand to the district court with instructions to hold a hearing, take evidence, make findings, and provide a certified record as expeditiously as possible. In the meantime we shall retain appellate jurisdiction.

*So ordered.*

---

**3.** A "building search" involves placing the luggage in an office or room and allowing the dog to search the entire room for narcotics. Such a search may be more reliable, but also more time consuming, than direct exposure of luggage to a dog.