**TEJIDOS DE COAMO, INC.,** etc., Plaintiff, Appellee,

v.

**INTERNATIONAL LADIES' GARMENT WORKERS' UNION, et al.,** Defendants, Appellants.

No. 93–1762.

United States Court of Appeals, First Circuit.

Heard Nov. 5, 1993.

Decided April 25, 1994.

Ira Jay Katz with whom Rosa Garcia Badillo, Nicolas Delgado, Reinaldo Perez–Ramirez, and Jose E. Carreras–Rovira were on brief, for appellants.

Vicente J. Antonetti, Howard Pravda, Goldman, Antonetti, Cordova & Axtmayer, R. Carl Cannon, Frank B. Shuster and Constangy, Brooks & Smith were on brief, for appellee.

Before TORRUELLA, Circuit Judge, COFFIN, Senior Circuit Judge, and BOUDIN, Circuit Judge.

BOUDIN, Circuit Judge.

On January 12, 1993, Tejidos de Coamo, Inc. ("the Company") filed this suit in district court against the International Ladies' Garment Workers' Union and one of its locals (collectively, "the Unions"). The complaint, premised on section 301 of the Taft–Hartley Act, 29 U.S.C. § 185, sought a declaration that no contract existed between the Company and the Unions; and the Company also requested a stay of pending arbitration proceedings. The district court granted a stay *pendente lite*, and the Unions appealed. We vacate the stay and remand for further proceedings.

I.

Well before the current law suit, the Company and the Unions were parties to a collective bargaining agreement covering the Company's knit, cut, and sew employees at Barranquitas, Puerto Rico. That contract expired on February 29, 1992. Thereafter, on April 17, 1992, the parties entered into a "summary of agreement" looking toward a new contract. It is enough for present purposes to say that the Company believes that no effective contract was adopted at that time or thereafter; the Unions, by contrast, take the view that (based on past practice and the summary of agreement) a new contract did go into effect on or after April 17, 1992, retroactive to February 1, 1992, and is currently in force.

On November 5, 1992, the Unions requested arbitration, before arbitrator David Helfeld, of a dispute concerning access for union representatives to the Company's Barranquitas mill. The Company agreed; its explanation for agreeing is that the contract that expired on February 29, 1992, had provided for arbitration of disputes arising under that agreement and that the access dispute dated back to the period before the contract expired. The arbitrator scheduled a hearing for December 7, 1992.

On or about November 30, 1992, the Unions learned that some of the Company's employees desired to decertify the Unions as the representative of the Barranquitas workers and were preparing to petition the National Labor Relations Board for a new election. In early December 1992 there was a strike and certain employees were disciplined by the Company for what it said was strike and picket-line misconduct. The Unions then sought arbitration before arbitrator Helfeld of these disciplinary disputes. The Company objected that there was no contract and thus no basis for arbitration of new disputes arising after February 29, 1992.

The arbitrator held a hearing on December 30, 1992, and advised the parties that he would determine whether he had authority to proceed. The Company then filed the present lawsuit on January 12, 1993; the complaint sought, as already noted, a judicial declaration that no contract existed after

February 29, 1992, a determination that would strip the arbitrator of power at least as to disputes arising after that date. The Company also sought a judicial stay of the arbitration while the contract issue was being determined by the court.

On January 20, 1993, a magistrate judge denied a stay of the arbitration proceedings. On January 27, 1993, the arbitrator issued a decision finding that a contract currently existed between the Company and the Unions. He proposed to schedule additional hearings on the merits of the disputes. The Company appealed the magistrate judge's decision and also asked the district court to stay further arbitration proceedings pending the court's decision as to whether the arbitrator had authority to proceed.

On June 21, 1993, the district court issued a stay *pendente lite* of arbitration as to grievances alleged to have arisen after February 29, 1992. The Unions then filed the present appeal to this court. So far as we have been advised, the district court has not yet determined the merits of the dispute and we are concerned only with the Unions' claim that interim relief—reflected in the stay of arbitration—was improperly granted.

## II.

■ On this appeal, the first question presented is whether we have jurisdiction to review the stay of arbitration granted by the district court as either a final order or an appealable interlocutory injunction. The Company has raised this issue by motion to dismiss the appeal. Clearly, the district court's stay is not a final disposition of the case. But we agree with the Unions that it is an appealable interlocutory injunction.

The governing statute, 28 U.S.C. § 1292(a)(1), provides for immediate appeals of interlocutory orders of district courts "granting ... [or] refusing ... injunctions." An order staying an arbitration proceedings is in substance, and often in form, a directive to the parties to cease the arbitration. It is thus injunctive in character, *A. & E. Plastik Pak Co. v. Monsanto Co.*, 396 F.2d 710, 713 (9th Cir.1968), and one might think that there could be little doubt that such an order was immediately appealable.

The doubts, such as they are, stem from two facts. First, several circuits, including this one, have held that an order refusing to stay an arbitration proceeding is not immediately appealable under 28 U.S.C. § 1292(a)(1).[1] Second, in a series of decisions beginning with one by Judge Friendly in the *Lummus* case,[2] the Second Circuit has gone further and held that an order staying an arbitration proceedings also is not immediately appealable under 28 U.S.C. § 1292. The Company argues that the Second Circuit's approach is supported by considerations of symmetry and policy.

The Second Circuit appears to stand alone. At least six other circuits treat an order staying arbitration as an injunction that is immediately appealable.[3] Our own decision in *Societe Generale v. Raytheon European Management and Systems Co.*, 643 F.2d 863 (1st Cir.1981), tenuously distinguished by the Company, leans in the direction of the majority rule. A 1988 amendment to the Federal Arbitration Act, now 9 U.S.C. § 16(a)(2)— although perhaps formally inapplicable to this case—expresses a congressional policy in favor of immediate appeal of "an interlocutory order granting ... an injunction against an arbitration that is subject to this title."[4]

1. *E.g., New England Power Co. v. Asiatic Petroleum Corp.*, 456 F.2d 183, 185 (1st Cir.1972); *Stateside Machinery Co. v. Alperin*, 526 F.2d 480, 482–84 (3d Cir.1975).

2. *Lummus Co. v. Commonwealth Oil Ref. Co.*, 297 F.2d 80 (2d Cir.1961), *cert. denied*, 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962). Later Second Circuit cases are listed in 16 Wright, Miller, Cooper & Gressman, *Federal Practice and Procedure* § 3923, at 60 (1977).

3. The circuits are the Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, and the District of Columbia. *E.g., Timberlake v. Oppenheimer & Co., Inc.*, 729 F.2d 515, 518–19 (7th Cir.1984); *see* 16 Wright, *supra*, § 3923 (1977 and 1994 Supp.).

4. The arbitration title broadly covers arbitration clauses in maritime agreements or agreements evidencing transactions involving interstate commerce, 9 U.S.C. § 2, but it excludes "contracts of employment" from its scope. *Id.* § 1; *see Paperworkers Co. v. Misco*, 484 U.S. 29, 40 n. 9, 108 S.Ct. 364, 372 n. 9, 98 L.Ed.2d 286 (1987).

Judge Friendly's views are never lightly to be disregarded. However, his main concern in *Lummus* was with "the baneful effect" of permitting appeals from "order[s] refusing a stay of arbitration." 297 F.2d at 86. As he explained, immediate appeals from such orders would compromise the speedy, informal disposition at which arbitration agreements aim. *Id.* Judge Friendly then concluded that, as a matter of symmetry, "if an order refusing a stay" is deemed not to be an injunction, then "an order granting such a stay" also cannot be so classified. *Id.*

Courts since *Lummus* have been willing to entertain just such a distinction between orders granting stays of arbitration and orders denying them. Perhaps the best way to explain this outcome is to say that both orders constitute injunctions but that the policy favoring arbitration precludes an immediate appeal where the district court has refused a stay. *New England Power Co., supra,* 456 F.2d at 186. After all, treating procedure as a special concern of the courts, judges have not hesitated to embroider the Judicial Code with other judge-made rules on appealability. *E.g., Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

■ Accordingly we believe that an order declining to stay an arbitration is an injunction but for policy reasons is not immediately reviewable by appeal, although of course fundamental objections to the arbitration are preserved for later judicial review if an award is made. By contrast, an order staying arbitration is an injunction that is immediately appealable under 28 U.S.C. § 1292(a)(1), even where section 16 of the Federal Arbitration Act does not apply to the particular order. We thus have jurisdiction to review the district court's stay order in this case, and turn now to the question whether the district court had authority to grant such a stay.

5. Section 1 of the statute says that federal courts have no jurisdiction to issue temporary restraining orders or injunctions in such cases except in "strict conformity" with the statute; section 4 prohibits any temporary restraining order or injunction against certain acts (*e.g.,* refusing to work) regardless of circumstances; and section 7 imposes severe conditions on the grant of injunc-

### III.

The Unions claim that the stay granted by the district court was an injunction issued in violation of the stringent requirements of section 7 of the Norris–LaGuardia Act, 29 U.S.C. § 107. In the alternative, the Union says that the stay was unjustified even under the less stringent equitable standards that govern ordinary injunctions. For reasons already indicated we agree that the stay comprised an injunction. The next, and more difficult, question is whether section 7 supplies the yardstick.

■ Section 7 is one of a set of interlocking provisions of the Norris–LaGuardia Act designed to curb the use of federal court injunctions in cases "involving or growing out of a labor dispute."[5] Under section 7, no injunction may be issued in such a case except after an evidentiary hearing, specified findings by the court, and certain other steps including a bond. The required findings include findings that absent an injunction "substantial and irreparable injury to complainant's property will follow" and that public officers "are unable or unwilling to furnish adequate protection." *Id.*

The threshold question, where section 7 is invoked, is whether the case derives from a "labor dispute," a critical phrase that provides the outer boundary for much of the Norris–LaGuardia Act. On the face of the matter, a dispute between an employer and its unions involving arbitration, plant access, discipline of employees, and the existence *vel non* of a collective bargaining agreement does comprise a labor dispute, taking that phrase literally. The pertinent definitions in the statute are broad, *see* section 13, 29 U.S.C. § 113, and have been broadly construed by the courts including the Supreme Court.[6]

tive relief where it is not barred outright by section 4. 29 U.S.C. §§ 101, 104, 107.

6. *Burlington Northern R.R. v. Brotherhood of Maintenance of Way Employees,* 481 U.S. 429, 441–42, 107 S.Ct. 1841, 1849, 95 L.Ed.2d 381 (1987); *International Ass'n of Machinists v. Eastern Air Lines,* 826 F.2d 1141, 1145 (1st Cir.1987).

While the Supreme Court has been unwilling to narrow the definition of "labor dispute," it has carved out a quite important set of exceptions to the Norris–LaGuardia Act in relation to arbitration. Following the Taft–Hartley Act's creation of contract suits under section 301, the Supreme Court upheld an injunction requiring an employer to arbitrate a dispute, as the employer and union had agreed. *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). What is pertinent here is not the decision's famous holding that federal law governs such labor contracts; it is the further conclusion that section 7 did not apply to the injunction:

> The congressional policy in favor of the enforcement of agreements to arbitrate grievance disputes being clear, there is no reason to submit them to the requirements of § 7 of the Norris–LaGuardia Act.

*Id.* at 458–59, 77 S.Ct. at 918–19 (footnote omitted).

Thereafter, in *Boys Markets, Inc. v. Retail Clerks Union,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), the Court took the even more extreme step of approving a federal court injunction to enjoin a strike that the union was conducting despite a contract promising to arbitrate and to refrain from strikes. Section 7 aside, this injunction required the Court to override section 4's flat prohibition on federal injunctions against strikes. 29 U.S.C. § 104. Nevertheless, Justice Brennan declared that "the unavailability of equitable relief in the arbitration context" would frustrate Congress' policy "favoring the voluntary establishment of a mechanism for the peaceful resolution of labor disputes...." 398 U.S. at 253.

The twin themes in these cases are the desirability of enforcing labor contracts and the desirability of arbitration. At least where these objectives coincide, as in *Lincoln Mills* and *Boys Markets,* we are told that the Norris–LaGuardia Act's "seemingly absolute terms" can be made to yield to "the subsequently enacted provisions of § 301(a) ... and the purposes of arbitration." *Boys Markets, supra,* 398 U.S. at 249–50, 90 S.Ct. at 1591–92. We do not think that in this case injunctive relief can be justified on either ground—to enforce a contract or support arbitration—let alone both.

It requires no argument to show that the stay of arbitration granted in this case is not a step fostering arbitration. Nor can the stay fairly be described as one to *enforce* a collective bargaining agreement. The Company's position, after all, is that there is no such agreement at all. The Company is seeking not to enforce a contract but to obtain a judicial determination that none exists. This is a permissible aim but it is rather far from the circumstances of *Lincoln Mills* and *Boys Markets.*

The Company's argument for bypassing section 7 is not without some force. It points out that whatever the strength of the policy favoring arbitration of labor disputes, the obligation to arbitrate remains a creature of contract. *United Steelworkers of America v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). Thus, there is no obligation to arbitrate if the parties did not agree to do so. *Id. A fortiori* there is no obligation to arbitrate if the parties did not agree to anything, as the Company claims here. Indeed, in *AT & T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), the Supreme Court held that a court cannot order arbitration without a judicial finding that there is an agreement providing for it.

But *AT & T Technologies,* although heavily stressed by the Company, does not directly govern our case. Here the arbitration clause invoked by the Unions does not require a court order: an arbitrator being already designated under the alleged contract—that is, the prior contract that the Unions claim to have been extended—the Unions could begin the process without cooperation from the Company or aid from the courts. It is the Company that has taken the offensive and sought to preempt the arbitration. Nothing in *AT & T Technologies* addresses the question whether section 7 applies to injunctive relief when an employer seeks to preempt arbitration.

Taking a very broad view, one could argue that the *Lincoln Mills* policy of issuing in-

junctions to enforce labor contracts should entail an equal willingness to help parties avoid spurious claims that a contract exists. It might also be argued that, despite the Norris–LaGuardia Act's sweeping language, the primary concerns that it had with labor injunctions involved conduct such as lawful strikes, peaceful picketing and union organizing which are very remote from the conduct—a disputed arbitration proceeding—sought to be stayed in this case. These are not frivolous arguments.

On the other hand, the judicial virtues include respecting statutory language, and section 7 seems on its face to apply to our case. The *Lincoln Mills* and *Boys Markets* cases are distinguishable because they involved affirmative enforcement of collective bargaining contracts in support of arbitration. Also, what law can be found in the circuits may lean slightly in favor of the view that section 7 does apply here: the Ninth Circuit has so held, as did the Third (though by a two-to-one vote); and the Second Circuit cases that look in the opposite direction do not directly discuss our issue.[7]

On balance, we are disposed to hold that section 7 does govern a suit to enjoin a labor arbitration—unless and until the Supreme Court says otherwise. Carving out new exceptions to the Norris–LaGuardia Act, or markedly extending old ones, is primarily a matter for the Supreme Court. We think such a step is entirely possible; but we do not think it so certain that we should anticipate it. Modern labor law, after all, is largely a construct of Congress, the Labor Board, and the Supreme Court. The edifice does not need another architect.

## IV.

To say that section 7 applies is not the end of the matter. The central findings and procedures required for an injunction under section 7 differ from those required for an ordinary injunction,[8] but only by degree and in detail. The most important findings required by and peculiar to section 7 are that "unlawful acts" be threatened, that "substantial and irreparable injury to complainant's property" will follow absent an injunction, and that "public officers" "are unable or unwilling to furnish adequate protection" to the property.[9]

Based on these requirements, especially the reference to public officers, a decent argument could be made that section 7 precludes any injunctive relief in a labor dispute except where essential to prevent damage to physical property caused by violent acts. That reading, however, goes slightly beyond the precise words of the statute. Further, there would be some tension between such a view of section 7 and the Supreme Court's willingness to uphold injunctions in aid of contractually promised arbitration (*Lincoln Mills* ) and even against peaceful strikes (*Boys Markets* ).

Having given the term "labor disputes" a broad reading, we see good reason to preserve at least the potential for injunctive relief where unlawful (but non-violent) acts threaten to cause "substantial and irreparable injury" to some property-like interest (other than physical security). There is even legislative history in the Norris–LaGuardia Act to the effect that Congress did not mean to preclude injunctive relief against "unlawful acts *or* acts of fraud *or* violence."[10] If the balance of harms and irreparable injury re-

---

7. *Compare Camping Constr. Co. v. District Council of Iron Workers,* 915 F.2d 1333 (9th Cir.1990) (no stay), *and Lukens Steel Co. v. United Steelworkers of America,* 989 F.2d 668 (3d Cir.1993) (same by a divided court), *with Diamond Glass Corp. v. Glass Warehouse Workers and Paint Handlers Local Union 206,* 682 F.2d 301 (2d Cir. 1982) (arbitration enjoined without discussing section 7).

8. The almost universal considerations in granting a preliminary injunction are a (1) a likelihood of success on the merits, (2) irreparable injury to the moving party, (3) outweighing harm to the

opponent, and (4) compatibility of the injunction with the public interest.

9. Section 7 also requires findings that the balance of harms as to each element of the injunction be in favor of the complainant and that complainant lack an adequate remedy at law; but these are requirements that normally apply to any injunction.

10. S.Rep. No. 163, 72d Cong., 1st Sess. 11 (1932) (emphasis added); *see Grace Co. v. Williams,* 96 F.2d 478, 481 (8th Cir.1938), recounting the legislative history.

quirements are taken seriously, little danger exists of promiscuous injunctions under section 7.

This danger is further reduced by two other considerations. First, no matter what threats or harms are presented, section 4—except as limited by the Supreme court—creates an unqualified "no injunction" zone for the core conduct of striking, organizing in unions, and picketing. Second, where the conduct falls outside that zone, the substantive findings required by section 7 are backed by procedural requirements that go beyond those of ordinary injunctions (*e.g.*, an evidentiary hearing and a bond for costs and attorney's fees).

■ In this case, we do not think that either the findings or the procedural requirements of section 7 were satisfied. The district court may have assimilated a stay of arbitration to a stay of a phase of its own proceedings, for which no findings of any kind would be required. But despite some similarities, the stay of arbitration is a coercive order directed not at the court's own proceedings but at the out-of-court activities of parties before the court. That, in fact, is why the stay is an injunction appealable under 28 U.S.C. § 1292(a).

Here, starting with procedure, the district court apparently omitted the requirement that no injunction be granted except "after hearing the testimony of witnesses in open court (with the opportunity for cross-examination)," section 7; nor were there separate formal findings of fact covering the issues for which section 7 requires such findings;[11] nor does it appear that bond was filed to cover damages including attorney's fees, as section 7 also requires. There may be cases where one or another of these procedural requirements is waived or its omission is manifestly harmless; but the lack of substantive findings cannot be so easily ignored.

Turning to substance, we do not think that it is apparent how the lack of an injunction threatened the Company with substantial and irreparable injury. In this court, the only claim made by the Company under this head is that the arbitration proceedings would be used by the Unions "as campaign propaganda in a decertification election." This assertion is not explained in the brief, and it is scarcely self-evident that the arbitration proceedings would or would even be likely to alter the election results.

If the concern is with relief that the arbitrator might order, the short answer is that the award is not self-executing. A valid objection to jurisdiction would be presented to and decided by the court before the award was implemented. As for any propaganda benefit accruing to the Unions from the existence of the arbitration or even the arbitrator's findings, the Company is no less free to publicize its own claim that the arbitration is a nullity, pointing to its declaratory judgment suit as evidence that the challenge is a serious one.

■ In its district court papers the Company argued that it needed a stay to forestall a hopeless predicament: either participate in the arbitration "and risk waiving its right to judicial determination of the issue of substantive arbitrability" or decline to participate and be bound by the award if the arbitrator is later held to have jurisdiction. Not surprisingly, no authority was cited for the suggestion that the Company would waive an explicitly asserted jurisdictional objection by defending on the merits. The suggestion is mistaken. *E.g., IAM Lodge 1777 v. Fansteel, Inc.,* 900 F.2d 1005, 1008–10 (7th Cir.), *cert. denied,* 498 U.S. 851, 111 S.Ct. 143, 112 L.Ed.2d 109 (1990).

■ It is true that participating would cause one form of loss, namely, the time and expense of litigation before the arbitrator. But courts have ordinarily not deemed litigation expense to be substantial and irreparable injury warranting an injunction, *Renegotiation Board v. Bannercraft Clothing Co.,* 415 U.S. 1, 24, 94 S.Ct. 1028, 1040, 39

---

**11.** Section 7 requires five findings. The first four are that unlawful acts are threatened, that substantial and irreparable injury will follow, that the balance of harm on each element of relief favors the complainant, and that complainant has no adequate remedy at law. The fifth finding, that public officers are unable or unwilling to furnish protection, is (as we read the statute) irrelevant where the harm is not of a kind that the police ordinarily prevent.

L.Ed.2d 123 (1974), *USM Corp. v. GKN Fasteners, Ltd.*, 574 F.2d 17, 20 (1st Cir.1978), and perhaps in deference to such decisions the Company does not argue to the contrary in this court. If the *Bannercraft* generalization may have some exceptions, nothing here makes this case appear exceptional.

■ In sum, so far as appears from this record, there is no substantial and irreparable injury—or at least injury of a kind that courts recognize in injunction cases. Under ordinary standards for injunctive relief, irreparable injury is nominally required but courts are often generous where the complainant's claim on the merits is very strong or unanswerable. Under section 7, however, there is no such generosity. Absent a supported finding of "substantial and irreparable injury," the stay of arbitration cannot stand.

### V.

This case is not over. The Company's complaint sought a declaration that there was no collective bargaining agreement in force after February 29, 1992, and so no obligation to arbitrate disputes arising after that date. Although section 301 actions are ordinarily brought to enforce contracts, the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, permits the declaration of rights about which a real controversy exists, and the Unions have not disputed the district court's authority to grant declaratory relief. Nor does section 7 pose any barrier to such a declaration; it is directed only against injunctions. *See, e.g., Wilkes–Barre Publishing Co. v. Newspaper Guild of Wilkes–Barr, Local 120,* 647 F.2d 372, 379 (3d Cir.1981), *cert. denied,* 454 U.S. 1143, 102 S.Ct. 1003, 71 L.Ed.2d 295 (1982).

If this seems an eccentric limitation on a useful remedy now customarily available to litigants, the short answer is that the Norris–LaGuardia Act reflects a unique historical experience. *See* Frankfurter & Greene, *The Labor Injunction* (1930). Perceived judicial abuses gave rise to severe restrictions on federal court authority; and the restrictions, being statutory, persist even though the climate that led to abuses has altered. Courts have assumed a lot of authority in recent years, but the authority to repeal statutes still belongs to Congress.

The stay of arbitration granted by the district court is *vacated* and the case is *remanded* for further proceedings on the request for declaratory relief.