In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-1950

AT&T BROADBAND, LLC, *et al.*,

*Plaintiffs-Appellants*,

*v.*

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS
and its LOCAL 21,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 02 C 2095—**Rebecca R. Pallmeyer**, *Judge*.

ARGUED SEPTEMBER 20, 2002—DECIDED JANUARY 29, 2003

Before EASTERBROOK, RIPPLE, and KANNE, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. This appeal presents the
question whether the Norris-LaGuardia Act, 29 U.S.C.
§§ 101-15, forbids a district court to enjoin the arbitration
of a labor dispute. Four other courts of appeals have
addressed this subject. All four have held that injunc-
tive relief is unavailable. See *Tejidos de Coamo, Inc. v.
International Ladies' Garment Workers' Union*, 22 F.3d 8
(1st Cir. 1994); *Lukens Steel Co. v. United Steelworkers*, 989
F.2d 668, 675-79 (3d Cir. 1993); *Camping Construction
Co. v. Iron Workers*, 915 F.2d 1333, 1340-50 (9th Cir.
1990); *In re Marine Engineers Beneficial Ass'n*, 723 F.2d

70 (D.C. Cir. 1983). Given *Green Tree Financial Corp. v. Randolph*, 531 U.S. 79, 84-89 (2000), appellate jurisdiction to review an order permitting arbitration to proceed, and ending the litigation, is secure.

Electrical Workers Local 21 contends that AT&T Broadband has failed to negotiate in good faith to reach agreements covering three particular bargaining units. It demanded arbitration under a master agreement between AT&T Corp. (AT&T Broadband's parent) and the International Brotherhood of Electrical Workers. AT&T (as we label all of the related corporate plaintiffs to simplify exposition) took the position that the master agreement calls for mediation rather than arbitration when the dispute arises before a collective bargaining agreement is in place for a particular bargaining unit. AT&T and the union earlier had created a standing arbitral body, which the union called on. The presiding neutral asked for the parties' views on whether this particular dispute comes within the scope of the reference. The union replied that it does; AT&T refused to participate and instead filed this suit under §301 of the Labor-Management Relations Act, 29 U.S.C. §185, seeking an injunction. The Union interposed §1 of the Norris-LaGuardia Act, 29 U.S.C. §101, which provides:

> No court of the United States . . . shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this chapter.

To apply the Norris-LaGuardia Act, we have only to know whether arbitration of a labor dispute is a matter "involving or growing out of a labor dispute". It does not

require deep insight to understand that the answer is "yes." Thus the statute applies, and district courts may not issue injunctions.

Yet if the resolution is so straightforward, why is AT&T digging into its pocket to pay lawyers, and why has this question been presented to four other appellate courts? One answer is that §§ 4 and 13 of the Act (29 U.S.C. §§ 104, 113) may blur the clarity of §1. Section 13(a) defines "labor dispute" this way:

> A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft, or occupation; or have direct or indirect interests therein; or who are employees of the same employer; or who are members of the same or an affiliated organization of employers or employees; whether such dispute is (1) between one or more employers or associations of employers and one or more employees or associations of employees; (2) between one or more employers or associations of employers and one or more employers or associations of employers; or (3) between one or more employees or associations of employees and one or more employees or associations of employees; or when the case involves any conflicting or competing interests in a "labor dispute" (as defined in this section) of "persons participating or interested" therein (as defined in this section).

Section 13(c) adds:

> The term "labor dispute" includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of

> employment, regardless of whether or not the dis-
> putants stand in the proximate relation of employer
> and employee.

AT&T observes that neither subsection mentions arbitra-
tion, from which it concludes that a dispute about ar-
bitrability is not a "labor dispute" and thus is outside §1.
We grant that arbitration is a dispute-*resolution* mecha-
nism, not an independent labor dispute. Still, the statutory
question is whether employer and union are engaged in
a dispute "concerning terms or conditions of employment"
(and so on); if yes, then a court may not issue an injunc-
tion in "a case involving or growing out of" that underly-
ing "labor dispute." AT&T and the Electrical Workers are
engaged in a "labor dispute" as §13 defines that term. See
*Jacksonville Bulk Terminals, Inc. v. Longshoremen*, 457
U.S. 702, 712 (1982); *Columbia River Packers Ass'n, Inc. v.
Hinton*, 315 U.S. 143, 147 (1942). That the arbitration is
not *itself* a "labor dispute" does not make this suit less
one "growing out of" a labor dispute. Otherwise one might
as well observe that a *strike* is not a "labor dispute" (it
is not in §13's list) and contend that it is therefore proper
to enjoin work stoppages. Yet a strike or lockout, like ar-
bitration, may arise from a labor dispute, and this con-
nection brings both within the scope of §1.

   Section 4, for its part, contains a list of particular things
that courts are not to enjoin. Section 4(a) specifies strikes,
§4(b) covers joining labor unions, and so on. Once again
arbitration is not on the list. Once again the omission is
unimportant. Section 4 does not say that the prohibi-
tion of §1 is *limited to* the sorts of activities mentioned in
§4. It is designed, rather, to shout "We really mean it!" for
activities at the core of union operations. The whole Norris-
LaGuardia Act is a response to judicial evasion of §20 in
the Clayton Act, 29 U.S.C. §52, which had been designed to
end the labor injunction. See *United States v. Hutcheson*,
312 U.S. 219 (1941); see also, e.g., *Burlington Northern*

*R.R. v. Maintenance of Way Employees*, 481 U.S. 429, 437-40 (1987). Section 4 of the Norris-LaGuardia Act ensured that the new statute would not suffer the same fate. It would be ironic if the enactment of §4 to make doubly sure that judges keep their noses out of labor disputes were used to evade the broader scope of §1. See *Marine Cooks v. Panama Steamship Co.*, 362 U.S. 365, 366 n.2 (1960) (§4 is not the limit of the Norris-LaGuardia Act's scope); *Marine Engineers*, 723 F.2d at 80.

AT&T's second line of argument starts from the holding of *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643 (1986), that, unless the parties agree otherwise, arbitrability is a question for a judge to decide. AT&T reads *AT&T Technologies* as establishing that this decision must precede the arbitration; and if it has a substantive right to a judicial decision then the Norris-LaGuardia Act must be read to accommodate that right, the argument wraps up. This would not be the first time that the Act has been interpreted to permit enforcement of a labor agreement; *Boys Markets, Inc. v. Retail Clerks Union*, 398 U.S. 235 (1970), holds that judges may enjoin strikes that violate collective bargaining agreements through which unions have agreed to arbitrate rather than strike when disagreements arise. And if injunctions may be used to enforce contracts under *Boys Markets*, why not when there is a right to a pre-arbitration decision about arbitrability?

One response to this theme is that it proves too much and would, if accepted, wipe out the core of the Norris-LaGuardia Act. The linchpin of AT&T's argument is that if the employer has a substantive right (here, to a judicial decision about arbitrability) then there *must* be a remedy by way of injunction. It would be only a small step to plug in other substantive rights. Suppose the employer has a substantive right to be free of secondary boycotts. If AT&T's syllogism is appropriate, then courts must

have authority to enforce this right by issuing injunctions. Bye, bye, Norris-LaGuardia Act, for this was the very way in which courts evaded §20 of the Clayton Act! Yet in *Burlington Northern* the Supreme Court unanimously held that the Norris-LaGuardia Act forbids injunctive relief against a secondary boycott, despite the fact that the boycott violated the employer's substantive rights.

What Congress established through the Norris-LaGuardia Act is that a substantive right does *not* imply an injunctive remedy. Employers have to settle for damages or other forms of *ex post* review, even if they turn out to be less effective at vindicating the underlying right. So it is no surprise that *Buffalo Forge Co. v. Steelworkers*, 428 U.S. 397 (1976), limited *Boys Markets* to one kind of agreement (the trade of arbitration for a no-strike promise) and added pointedly that the "driving force behind *Boys Markets* was to implement the strong congressional preference for the private dispute settlement mechanisms agreed upon by the parties." 428 U.S. at 407. *Buffalo Forge* and *Burlington Northern* establish that there is no generic labor-agreement exception to the Norris-LaGuardia Act.

AT&T, which wants the court to issue an *anti*-arbitration injunction, is in no position to seek shelter from the *Boys Markets* principle or an extension of that approach. See also *Textile Workers v. Lincoln Mills*, 353 U.S. 448 (1957) (holding that enforcement of an arbitration agreement does not offend the Norris-LaGuardia Act). If there were any doubt, §8 of the Norris-LaGuardia Act, 29 U.S.C. §108, resolves it by stating that even the limited injunctive relief otherwise available is not permissible unless the parties have exhausted arbitral remedies. Section 8 was the principal footing of the pro-arbitration order sustained in *Lincoln Mills*. An anti-arbitration injunction, by contrast, has no purchase in the Norris-LaGuardia Act.

What is more, the premise of AT&T's position—that if the Norris-LaGuardia Act were out of the picture it would be entitled to injunctive relief against an arbitration—is incorrect. Where's the irreparable injury? If AT&T loses in the arbitration, the union will seek to enforce its victory; AT&T can defend on the theory that it had not agreed to arbitrate this kind of dispute. Delay would not cause irreparable injury, so there is no justification for an injunction. All AT&T could lose from the delay is the cost of presenting the arguments to the arbitrator, and it has long been established that the expense of adjudication is not irreparable injury. See, e.g., *FTC v. Standard Oil Co.*, 449 U.S. 232, 244 (1980); *Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974); *Petroleum Exploration, Inc. v. Public Service Commission*, 304 U.S. 209, 222 (1938). So fundamental is this principle that we have held it sanctionably frivolous to seek an anti-arbitration injunction. See *PaineWebber Inc. v. Farnam*, 843 F.2d 1050 (7th Cir. 1988); *Graphic Communications Union v. Chicago Tribune Co.*, 779 F.2d 13, 16 (7th Cir. 1986).

Arbitration clauses reflect the parties' preference for non-judicial dispute resolution, which may be faster and cheaper. These benefits are eroded, and may be lost or even turned into net losses, if it is necessary to litigate about arbitrability, then arbitrate the underlying dispute, and finally return to court to decide whether the award should be enforced. People may prefer arbitration through standing panels in order to save the costs of pre-arbitration wrangling. Having agreed with the Electrical Workers on such an arrangement, AT&T cannot turn around and demand pre-enforcement review. Its request for an anti-arbitration injunction is more a breach of faith with the union than it is an effort to avoid "irreparable injury." AT&T agreed to, and must abide by, a system that postpones until after the arbitral decision any judicial

review of the question whether a particular dispute was arbitrable.

Nothing in *AT&T Technologies* is to the contrary. No one sought an anti-arbitration injunction in that case. It began instead when the union invoked the court's assistance to oblige a reluctant AT&T to arbitrate a dispute. Because the relief sought was an order compelling the other party to arbitrate, *of course* the district judge's decision preceded the arbitration; that's what the structure of the suit entailed. *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543 (1964), was in an identical posture. That the opinions in both of these cases say that a decision about arbitrability precedes the arbitration does not imply that this is the *only* proper sequence; it was just the right sequence for the kind of dispute that arose in those two cases. When arbitration can proceed with only one side's cooperation, by contrast, the timing issue comes to the fore, and with it the question whether pre-arbitration judicial review is essential to avoid irreparable injury. The answer is no, for the reasons we gave in *PaineWebber* and *Chicago Tribune*, which means that AT&T has no colorable argument for an extension of the *Boys Markets* principle to cover anti-arbitration injunctions, as opposed to injunctions that facilitate dispute resolution through arbitration.

Judge Boudin summed up nicely in *Tejidos de Coamo*, 22 F.3d at 15:

> If this [curtailment of equitable relief] seems an eccentric limitation on a useful remedy now customarily available to litigants, the short answer is that the Norris-LaGuardia Act reflects a unique historical experience. See Frankfurter & Greene, *The Labor Injunction* (1930). Perceived judicial abuses gave rise to severe restrictions on federal court authority; and the restrictions, being stat-

utory, persist even though the climate that led to abuses has altered. Courts have assumed a lot of authority in recent years, but the authority to repeal statutes still belongs to Congress.

We share this perspective and therefore join the four other circuits that have understood the Norris-LaGuardia Act to preclude injunctive relief against the arbitration of a labor dispute.

AFFIRMED

RIPPLE, *Circuit Judge*, dissenting. For the reasons stated by Judge Cowen in his dissenting opinion in *Lukens Steel Co. v. United Steelworkers of America*, 989 F.2d 668, 680 (3d Cir. 1993) (Cowen, J., dissenting), I would reverse the judgment of the district court.

A true Copy:

       Teste:

                                          —————————————————
                                          *Clerk of the United States Court of*
                                          *Appeals for the Seventh Circuit*