Alvin **BLYER, Regional Director of Region 29 of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner,**

v.

**STATEN ISLAND CABLE LLC d/b/a/ Time Warner Cable of New York City and Local Union No. 3, International Brotherhood of Electrical Workers, AFL–CIO, Respondents.**

No. 03 CV 1755(NG).

United States District Court, E.D. New York.

May 7, 2003.

Nancy Lipin, Brooklyn, NY, for Petitioner.

Kenneth Margolis Time Warner, Norman Rothfeld, New York City, for Respondents.

## PRELIMINARY INJUNCTION

GERSHON, District Judge.

In accord with the Opinion and Order issued by this court on May 7, 2003, it is ordered that respondents, their officers, agents, representatives, servants, employees, attorneys, and all members and persons acting in concert or participation with them, are enjoined and restrained, pending the final disposition of the matters involved herein pending before the National Labor Relations Board, from, in any manner, or by any means, giving force or effect to Section 7(a) of the current collective bargaining agreement between respondents, and Section 7(b) of the current collective bargaining agreement between respondents, inasmuch as it references Section 7(a), or to such clauses appearing in any successor agreements, to the extent that those sections require that Time Warner's right to subcontract work is limited to those companies having agreements with Local 3 similar to the collective bargaining agreement between respondents.

**SO ORDERED.**

### OPINION AND ORDER

Petitioner, Alvin Blyer, Regional Director of Region 29 of the National Labor Relations Board ("Board"), brings this application pursuant to Section 10(1) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(1), seeking to preliminarily enjoin respondents from engaging in unfair labor practices violative of Section 8(e) of the NLRA, 29 U.S.C. § 158(e). Specifically, petitioner claims that Section 7 of the collective bargaining agreement (the "CBA") between respondents constitutes an improper "union signatory" agreement, that is, an agreement which permits an employer to transfer work to another employer only if it has a contract with the union. Here, the CBA requires respondent Staten Island Cable LLC d/b/a/ Time Warner Cable of New York City ("Time Warner") to cease doing business with D.M. & M. Cable Services, Inc. d/b/a Advantage Cable ("Advantage"), because Advantage no longer has a contract with Local Union No. 3, International Brotherhood of Electrical Workers, AFL–CIO ("Local 3"). Respondents, Time Warner and Local 3, oppose petitioner's request, arguing that: (1) the Board improperly found that Section 7 of the CBA is facially violative of Section 8(e) without first weighing the evidence as to the purpose of Section 7; (2) that Section 7 of the CBA does not violate Section 8(e); and (3) that, in any event, the court is prohibited from enjoining Local 7 from seeking arbitration if Time Warner were to subcontract work to Advantage.

As a preliminary matter, contrary to respondents' contention, the regional director is not required to make full factual findings that there has been a violation of

Section 8(e) prior to seeking an injunction. Rather, Section 10(1) of the NLRA provides that, once a charge of an 8(e) violation has been brought to the Board, the regional director conducts a preliminary investigation to determine if there is reasonable cause to believe such charge is true. If reasonable cause is found, the regional director is authorized to petition the district court for injunctive relief pending "final adjudication" by the Board. 29 U.S.C. § 160(1).

## Standard of Review

In a proceeding under Section 10(1) for injunctive relief, the court is not called upon to decide whether an unfair labor practice has been committed. The ultimate determination of the merits is reserved exclusively to the Board, subject to review by the Court of Appeals pursuant to Sections 10(e) and (f) of the NLRA, 29 U.S.C. §§ 160(e) and (f). With respect to factual issues, the court's inquiry is limited to whether the Board has reasonable cause to believe that the respondents have violated the NLRA as charged. It is sufficient that the evidence, with the reasonable inferences to be drawn therefrom, supports a conclusion that there is reasonable cause to believe that a violation has occurred. *Douds v. Milk Drivers & Dairy Employees Union, Local 584*, 248 F.2d 534, 537–8 (2d Cir.1957). With respect to legal issues, " the district court should be hospitable to the views of the General Counsel, however novel," *Danielson v. Joint Board of Coat, Suit and Allied Garment Workers' Union*, 494 F.2d 1230, 1245 (2d Cir. 1974), for "the Board, rather than the district courts, remains the primary fact finder and primary interpreter of the statutory scheme." *McLeod v. National Maritime Union*, 457 F.2d 490, 494 (2d Cir.1972)(quotations omitted). If the court finds that the regional director has reasonable cause to believe that a violation of Section 8(e) exists, then, under Section 10(1), it must grant such relief as it finds "just and proper."

## Facts

The respondents have expressly agreed that there are no disputed issues of fact pertinent to the application for an injunction. The evidence set forth by the Board establishes the following:

Time Warner is engaged in the business of installing and operating cable television systems on Staten Island. Local 3 represents certain Time Warner employees pursuant to the CBA, which is effective between April 1, 2001 and February 28, 2005. Section 7 of the CBA states, in pertinent part, that:

(a) The Company [Time Warner] shall have the right to subcontract the work referred to in Section 6 of the Agreement with companies having agreements with the Union [Local 3] similar to this agreement and providing such subcontracting is not done for the purpose of laying off employees.

(b) For two years from the effective date of this Agreement, the company shall have the right, in addition to utilizing its in-house employees as specified in this Agreement or, Local 3 contractors as specified in Subsection (a) above, to subcontract Cable Modem Work to companies which do not have agreements with the Union or which have agreements which are not similar to this Agreement, provided however, that there are no more than 120 such contractor employees performing such Work at any one time. Following that two-year period, the provisions of Subsection (a) above will apply to the contracting out of such Cable Modem Work.

Time Warner subcontracts a portion of its cable installation work to several contractors, one of whom, until April 1, 2003, was Advantage. Local 3 represented the employees of Advantage who performed cable installation work from sometime in 1992 or 1993 until March 31, 2003, when their collective bargaining agreement expired.

During the fall of 2002, representatives of Time Warner notified Advantage that Time Warner could not renew Advantage's contract to perform cable installation services unless Advantage had a current collective bargaining agreement with Local 3. On January 8, 2003, Local 3 notified Advantage that it would not be renewing its contract with Advantage. Advantage attempted to initiate negotiations with Local 3 but received no response. In late March of 2003, Time Warner informed Advantage that, if Advantage did not have a collective bargaining agreement with Local 3, Time Warner could not continue to contract with Advantage after March 31, 2003.

On April 4, 2003, Local 3 and Time Warner discussed the possibility of Time Warner continuing to contract with Advantage, effectively ceasing to give effect to the challenged portions of Section 7 of the CBA. Local 3 indicated that it would initiate a grievance and arbitration against Time Warner to enforce the terms of Section 7. Advantage then filed a charge with the NLRB claiming that the respondents, by giving effect to Section 7 of the CBA, are engaging in unfair labor practices within the meaning of Section 8(e) of the NLRA.

**Section 8(e)**

Congress enacted Section 8(e), the so-called "hot cargo" section, as part of the 1959 Landrum–Griffin Amendments to the NLRA, in an attempt to eliminate agreements in which a union and an employer agree to refrain from doing business with another employer. Section 8(e) provides, in part, that:

> It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer, or cease doing business with any other person, and any other contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforceable and void

As described by the Supreme Court in *National Woodwork Manufacturers Assn. v. NLRB*, 386 U.S. 612, 87 S.Ct. 1250, 18 L.Ed.2d 357 (1967), the purpose of Section 8(e) is to prohibit agreements that concern a secondary, as opposed to a primary or contracting employer. However, it does not prohibit all union and employer agreements that may have the secondary effect of a cessation of business with other employers. For example, clauses that contain language that could be viewed as violating Section 8(e) are not prohibited if they have the primary objective of preserving work performed by the contracting employer's employees. *See NLRB v. Longshoremen ILA,* 447 U.S. 490, 100 S.Ct. 2305, 65 L.Ed.2d 289 (1980); *International Association of Bridge Structural and Ornamental Iron Workers, AFL–CIO and Southwestern Materials & Supply, Inc.,* 328 NLRB 934 (1999). Thus, in analyzing clauses alleged to violate Section 8(e), the first question to be answered is whether the clause is secondary in nature or has the primary objective of preserving bargaining unit work.

■ In *National Woodwork*, the Supreme Court held that the answer to the

question whether an agreement to cease doing business is a lawful work preservation agreement or has a proscribed secondary objective depends on "whether, under all the surrounding circumstances, the Union's objective was preservation of work for [bargaining unit] employees or whether the [agreement ... was] tactically calculated to satisfy union objectives elsewhere.... The touchstone is whether the agreement or its maintenance is addressed to the labor relations of the contracting employer vis-á-vis his own employees." *National Woodwork, supra,* 386 U.S. at 644–45, 87 S.Ct. 1250. Applying these principles to the clause at issue here, I find that the petitioner has reasonable cause to believe that Section 7 of the CBA is not a lawful work preservation clause but rather has an improper secondary purpose.

Section 7 of the CBA allows Time Warner to "subcontract the work referred to in Section 6 of the Agreement with companies having agreements with [Local 3] similar to this agreement and providing such subcontracting is not done for the purpose of laying off employees." It is undisputed that this clause prohibits Time Warner from subcontracting with companies who do not have contracts with Local 3. As this clause prohibits Time Warner from subcontracting work to any company that does not have a contract with Local 3, it seeks to regulate the labor policies of entities (in this case, Advantage), which are not parties to the CBA. Contract clauses that dictate the labor policies of non-signatories have long been found to have a secondary rather than primary work preservation objective and thus fall within the general proscription of Section 8(e) of the NLRA. *See e.g. South Jersey Regional Council of Carpenters, Local 623,* 2001 WL 1022053, 335 NLRB 49 (2001). Respondents could have agreed to prohibit subcontracting completely in the CBA, or they could have agreed to limit subcontracting

to those companies whose terms and conditions matched the economic terms and conditions of the CBA. *See Danielson v. International Organization of Masters, Mates and Pilots, AFL–CIO,* 521 F.2d 747, 752 (2d Cir.1975), noting the legality of such "union standards" clauses. Section 7 of the CBA does neither of these; instead, it requires Time Warner to subcontract only with other companies having contracts with Local 3. Local 3 further argues that, if Section 7 is "determined to be illegal, Time Warner would be tempted to subcontract much of its cable installation and service work which for many years has been performed by the bargaining unit, thus creating a substantially adverse effect upon the bargaining unit and its work opportunities." This argument ignores that the work performed by the bargaining unit is not at stake in the challenged portions of Section 7. What is illegal about Section 7 is that the challenged limitation on subcontracting is solely for the benefit of Local 3 and not for the bargaining unit.

Local 3 argues that Section 7 of the CBA does not exert secondary pressure on Advantage in violation of Section 8(e) because: (1) at the time Local 3 entered into the CBA with Time Warner, "Advantage probably had not yet come into existence;" and (2) Local 3 has not asked Time Warner to exert pressure upon Advantage to sign an agreement with Local 3. Local 3 contends that, because it chose not to renew the collective bargaining agreement with Advantage, it cannot be seen as exerting pressure upon Time Warner with respect to Advantage.

With respect to Local 3's first argument, even if factually accurate, the timing of the CBA in relation to when Advantage came into existence is not relevant. This argument is based upon the illogical premise that, if a CBA pre-exists the formation of another company, that company cannot be

negatively affected by a CBA that violates Section 8(e). Section 7 of the CBA looks forward in time and is, on its face, applicable to any subcontracting agreement that Time Warner wished to enter into. Local 3 told Time Warner that Local 3 would seek arbitration to enforce the provisions of Section 7, should Time Warner cease giving effect to it. For Local 3 to claim that Section 7 does not have an impact on Advantage (or any other potential subcontractor) is inconsistent with the undisputed record. Local 3's second argument, that Local 3 has not asked Time Warner to pressure Advantage is also flawed. The issue before the court is not whether Local 3 sought to force Advantage to sign a contract. Local 3 has demanded that Time Warner give effect to Section 7 and, as discussed earlier, Section 7 of the CBA exerts secondary pressure because it seeks to regulate the labor policies of companies that are not signatories to the CBA.

In sum, Local 3 correctly notes that, under the teachings of *National Woodwork*, the issue in a Section 8(e) case is whether the contested contract provision has a primary effect of preserving work for the bargaining unit. But as just described, the Board has demonstrated that it has reasonable cause to believe that Section 7 violates Section 8(e), and Local 3 has not set forth any facts or sound legal arguments supporting its conclusory claim that Section 7 is a work preservation provision.

Alternatively, Local 3 argues that, even if the CBA is found to violate Section 8(e), the *Norris–LaGuardia Act*, 29 U.S.C. § 101, forbids courts from enjoining the arbitration of any labor dispute.[1] This argument is meritless. Section 10(1) ex-

pressly directs regional directors to seek injunctions to prevent the continuation of unfair labor practices. Local 3 relies on *AT&T Broadband, LLC v. International Brotherhood of Electrical Workers and its Local 21*, 317 F.3d 758 (7th Cir.2003), where the Court held that a district court cannot issue an injunction preventing a union from proceeding to arbitration on an issue involving or growing out of a labor dispute. Here, the dispute is as to the legality of a clause in the CBA, not, as existed in *AT&T*, a dispute over whether or not arbitration itself was the proper forum in which to resolve a dispute over the interpretation of an otherwise legal clause. Here, the claim, as in *Danielson*, 521 F.2d at 754–755, is that Local 3's effort to enforce an illegal contract provision itself constitutes an unfair labor practice. Where, as here, a contract clause calls for a result inconsistent with the NLRA, and the jurisdiction of an arbitrator provided by the contract is restricted to "disputes or disagreements between the Employer and the Union, . . . concerning the interpretation and/or application of any of the provisions of this Agreement," resort to arbitration may be futile, since it is not at all clear that the arbitrator may disregard the plain provisions of the contract. *Danielson*, 521 F.2d at 755. Section 10(1) directs an NLRB regional director to seek injunctive relief if the director has reasonable cause to believe that a violation of Section 8(e) is occurring and, and where a clause is found to violate Section 8(e), "it is unenforceable and void, it should not and cannot form the basis for any arbitration award, irrespective of the holding of the arbitrator, and the mere submission of the controversy would compound the statutory

---

1. The *Norris–LaGuardia Act* states, in pertinent part, that: "No court of the United States . . . shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in strict conformity with the provisions of this chapter . . ."

violation." *Id., citations omitted.* Indeed, to hold otherwise would produce the incongruous result of unenforceable arbitration awards. *See International Organization of Masters, Mates and Pilots v. Trinidad,* 803 F.2d 69, 72 (2d Cir.1986); *See also Perma–Line Corp. of America v. Sign Pictorial & Display Union,* 639 F.2d 890, 894–95 (2d Cir.1981).

Finally, Local 3 argues that the analysis used by the court in *Danielson* is not applicable because, in that case, the union was seeking to protect a pool of jobs which had never been within the union's jurisdiction, whereas here "Time Warner at all times retains control of the installation work and any cable subcontractor has an unfettered right to hire any cable installers it chooses." This argument misses the point, which is not that Advantage can hire non-union labor, but that, under the CBA, Time Warner cannot subcontract with any company that does not have a contract with Local 3. This is precisely the point of *Danielson,* namely, that contract provisions designed to influence the labor decisions of a non-signatory employer are unlawful.

### Standard for Award of Injunctive Relief

■ Section 10(1) of the NLRA provides that, where the court finds that the regional director has reasonable cause to find that an unfair labor practice has been committed, "the district court shall grant injunctive relief as it deems just and proper, notwithstanding any other provision of law." The propriety of an award of injunctive relief under Section 10 turns upon traditional equity criteria. *Hoffman v. Inn Credible Caterers, Ltd.,* 247 F.3d 360, 365 (2d Cir.2001). Injunctive relief should be granted when necessary to preserve or restore the status quo "as it existed before the onset of the unfair labor practices," *Id. at* 367–69, or to prevent irreparable injury.

*Kaynard v. Mego Corp.,* 633 F.2d 1026, 1033 (2d Cir.1980).

■ The scope of the relief sought by petitioner falls within the just and proper standard fixed by Congress. First, petitioner seeks only to enjoin respondents from giving effect to Section 7 of the CBA. It is undisputed that Advantage's employees have gone to other employers. Time Warner has conceded that it refused to continue to contract with Advantage because of Local 3's threatened grievance, not because of the quality of Advantage's work. Local 3's argument that there is no urgent need for an injunction because Advantage "may not find cable installers to replace its installers, all of whom went to work for other Staten Island cable contractors," is self-defeating. The very point of the injunction is to preserve the opportunity for both Advantage and its employees to continue their relationship with Time Warner, pending a final determination by the Board.

### Conclusion

Petitioner has demonstrated that it has reasonable cause to believe that the unfair labor practice charged, namely, that Section 7 of the CBA violates Section 8(e) of the NLRA, has occurred. The court also finds that injunctive relief is just and proper. Petitioner's application is granted and an injunction will issue, enjoining the respondents from giving force or effect to Section 7(a) of the current collective bargaining agreement between respondents, and Section 7(b) of the current collective bargaining agreement between respondents, inasmuch as it references Section 7(a), or to such clauses appearing in any successor agreements, to the extent that those sections require that Time Warner's right to subcontract work is limited to those companies having agreements with

Local 3 similar to the collective bargaining agreement between respondents.

**SO ORDERED.**