**PHILADELPHIA MARINE TRADE ASSOCIATION, Appellant,**

v.

**LOCAL 1291, INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL–CIO, and Joseph Hill and Warren Anderson.**

**No. 89–5796.**

United States Court of Appeals, Third Circuit.

Argued April 2, 1990.

Decided July 27, 1990.

Francis X. Scanlan (argued), Ricardo A. Byron, Scanlan & Scanlan, P.C., Philadelphia, Pa., for appellant.

Stanley B. Gruber (argued), Freedman and Lorry, P.C., Haddonfield, N.J., for appellees.

Before MANSMANN, SCIRICA, and SEITZ, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

Plaintiff, Philadelphia Marine Trade Association (PMTA), appeals the denial of its application for a preliminary injunction which it sought under section 301 of the Labor–Management Relations Act, 29 U.S.C. § 185 (1988). The defendants are Local 1291, International Longshoremen's Association; its president, Joseph Hill; and its business agent, Warren Anderson. Plaintiff sought to have barred a strike that it alleged was in violation of the "no-strike" clause of the collective bargaining agreement between plaintiff and Local 1291. We have jurisdiction under 28 U.S.C. § 1292(a) (1988).

### I.

Plaintiff is a multi-employer bargaining association, which has negotiated collective bargaining agreements with the International Longshoremen's Association, AFL–CIO (ILA), on behalf of its members. Plaintiff and Local 1291, a chartered local of the ILA, entered into a collective bargaining agreement for the term October 1, 1986, to September 30, 1989, which was extended by the parties until November 30, 1990. The contract contains a broad grievance and arbitration clause and a no-strike

provision.[1] Defendants do not dispute the existence of the agreement or that those clauses are binding on them.[2]

Southern Stevedoring Company (Southern), a subsidiary of Del Monte Tropical Fruit Company and a member of PMTA, entered into an additional memorandum of agreement with Local 1291 covering working conditions at Southern's facilities at Pier 5 in Camden, New Jersey. In accordance with the provisions of this agreement, Southern selected three "house" or regular gangs from the union to perform the stevedoring at Pier 5.

On August 7, 1989, when Southern was scheduled to unload a cargo of perishable fruit, approximately 20 to 25 members of Local 1291 picketed the entrance to the terminal. It is undisputed that they did so because they were unhappy with the process for selecting house gangs. Although the president of Local 1291 asked the picketers to "rescind their pickets," they refused to do so.

Plaintiff then filed this action in the district court, seeking a temporary restraining order enjoining defendants and any individual represented by Local 1291 from violating the no-strike provision of the collective bargaining agreement. The complaint also sought submission of the dispute to arbitration. The court issued a TRO without opposition and granted a rule to show cause why a preliminary injunction should not issue. When the picketing continued, the court, on plaintiff's motion, issued a contempt order. Picketing ceased at that time

and discharging operations began at approximately 6:30 p.m. on August 7.

The district court conducted a hearing on August 17, 1989, at which one of the picketers testified regarding the reason for the picketing.[3] Thereafter, it found, and plaintiff does not dispute, that the August 7 picketing occurred without the union's formal authorization and therefore constituted a "wildcat" strike. The court further concluded that the union or its officials were not otherwise responsible for the unauthorized picketing. It therefore denied the preliminary injunction. This appeal followed.

## II.

Appellate review of a district court's denial of a preliminary injunction is limited to determining whether the court abused its discretion, committed an obvious error in applying the law, or made a clear mistake in considering the proof. *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 799 (3d Cir.1989). Where, as here, the essential findings of fact are conceded or are undisputed and the district court's decision rests on an interpretation of the law rather than on the facts, our review is broader.[4]

Plaintiff sought a preliminary injunction under section 301 of the Labor–Management Relations Act. The standard for injunctive relief against picketing in a labor dispute was announced by the Supreme Court in *Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), which

1. The provision of the contract governing arbitration and the prohibition against strikes reads in part:

 37. GRIEVANCE AND ARBITRATION:
 All disputes and grievances of any kind or nature whatsoever arising under the terms and conditions of this Agreement and all questions involving the interpretation of this Agreement other than any disputes or grievances arising under the terms and conditions of paragraph 16(d) hereof [regarding the number of men in a gang], shall be referred to a Grievance Committee....
 ....
 ... There shall be no strike and no lockout during the pendency of any dispute or issue while before the Grievance Committee, the Joint Panel or the Arbitrator.

2. The collective bargaining agreement does not contain a "best efforts" provision.

3. With the consent of counsel for the parties, James Peoples, one of the picketers, was permitted to testify to the effect that the picketers felt that the gang selection procedure did not treat senior gangs fairly and that if restraints on picketing were removed, another strike would occur regardless of the position of the union or the no-strike provision of the collective bargaining agreement. The case is therefore not moot.

4. *See* 11 C. Wright & A. Miller, Federal Practice and Procedure § 2962 (1973).

held that section 301 authorizes injunctions against strikes in violation of contracts that call for arbitration of the underlying grievances. *Boys Markets* represents an effort to accommodate the prohibition against labor injunctions by federal courts contained in section 4 of the Norris–LaGuardia Act, 29 U.S.C. § 104 (1988),[5] and the subsequently enacted provisions of section 301(a), 29 U.S.C. § 185(a) (1988),[6] giving the federal courts jurisdiction over suits arising out of collective bargaining agreements.[7]

In *Boys Markets*, the union itself called the strike against which the employer sought and obtained an injunction. The harder case is the one before us where the district court made an explicit finding that the union was not responsible for the picketing. Can an injunction issue against a union to ban wildcat picketing in violation of no-strike, arbitration provisions in the collective bargaining agreement without a finding of union responsibility? We turn to that important question.

The Supreme Court has not had occasion to address the power of a district court under section 301 to issue an injunction against a union in connection with a wildcat strike. It has emphasized, however, that the injunction exception to Norris–LaGuardia that it carved out in *Boys Markets* is a "narrow" one and that it does not follow "that injunctive relief [is] appropriate as a matter of course in every case of a strike over an arbitrable grievance." *Boys Markets*, 398 U.S. at 253–54, 90 S.Ct. at 1593–94. Thus, before we can apply *Boys Markets* to the case before us, we must determine whether plaintiff is entitled to any relief under section 301. That is, we must determine whether the union was responsible for a breach of the collective bargaining agreement.

■ Section 301(b) states in part that "[a]ny labor organization which represents employees in an industry affecting commerce as defined in this chapter and any employer whose activities affect commerce as defined in this chapter shall be bound by the acts of its agents." 29 U.S.C. § 185(b) (1988). Section 301(c), which refers to "duly authorized officers or agents ... engaged in representing or acting for employee members," suggests that the agents of a labor organization are limited to its officers or to individuals "duly authorized" to act on its behalf. 29 U.S.C. § 185(c) (1988). Therefore, union members *qua* members are not automatically agents of the union for section 301 purposes.

Section 301(e) further provides:

For the purposes of this section, in determining whether any person is acting as an "agent" of another person so as to make such other person responsible for his acts, the question of whether the specific acts performed were actually authorized or subsequently ratified shall not be controlling.

---

5. Section 4 of the Norris–LaGuardia Act provides in pertinent part:

No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute (as these terms are herein defined) from doing, whether singly or in concert, any of the following acts:
(a) Ceasing or refusing to perform any work or to remain in any relation of employment;
....
(e) Giving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence;
(f) Assembling peaceably to act or to organize to act in promotion of their interests in a labor dispute; ....
29 U.S.C. § 104 (1988).

6. Section 301(a) of the Labor–Management Relations Act provides:

(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
29 U.S.C. § 185(a) (1988).

7. While section 7(a) of the Norris–LaGuardia Act, 29 U.S.C. § 107(a) (1988), permits injunctions against "unlawful acts," we can find no authority for equating breach of contract with unlawful act. *See* H.H. Perritt, Jr., Labor Injunctions § 3.22 (1986). Indeed, to equate the two would render the accommodation in *Boys Markets* unnecessary.

29 U.S.C. § 185(e) (1988).[8] The Supreme Court has interpreted this provision to be a reflection of congressional intent to apply to unions the common-law doctrine of agency.[9]

Given the language of section 301, we conclude that in a wildcat-strike setting, absent formal authorization, the union can only be subject to injunctive relief when the picketing is attributable to it. This brings us to consideration of the possible theories under which a local union may be subject to an injunctive sanction in the context of a wildcat strike.

Three theories have been advanced under which unauthorized picketing by members may be attributed to the union for injunctive purposes. They are (1) the common-law rule of agency, (2) the "mass action" theory, and (3) the "best efforts" theory. The agency rule applies when it is found that the union has instigated, participated in or actively encouraged its members to continue an unauthorized work stoppage. *Eazor Express, Inc. v. International Bhd. of Teamsters*, 520 F.2d 951, 963 (3d Cir. 1975), *cert. denied*, 424 U.S. 935, 96 S.Ct. 1149, 47 L.Ed.2d 342 (1976). The mass action theory places responsibility on the union when essentially all its members engage in a concerted walkout. *Id.* The rationale for this theory is that "large groups of men do not act collectively without leadership and that a functioning union must be held responsible for the mass action of its members." *Id.* The best efforts theory is based on the premise that implicit

in a union's agreement not to strike is an obligation on its part to use every reasonable means to bring an end to an unauthorized strike begun by its members. *Id.* at 959. We will address these theories in turn.

## COMMON–LAW AGENCY

 The district court's jurisdiction to enforce collective bargaining agreements derives exclusively from section 301. In section 301(b) and (e), Congress made it clear that union responsibility was to be governed solely by agency principles. To waive that explicit requirement in the case of injunctive relief would, we think, result in "pierc[ing] the shield that Congress took such care to construct." *Carbon Fuel v. UMWA*, 444 U.S. 212, 218, 100 S.Ct. 410, 414, 62 L.Ed.2d 394 (1979). Indeed, it would impermissibly expand the scope of the narrow exception to Norris–LaGuardia's anti-injunction provisions created in *Boys Markets*.

Plaintiff argues that *Carbon Fuel*, which determined that a union can be held liable in damages on an agency theory only, applies only in an action for damages and that because it seeks injunctive relief, we must apply this court's holding in *United States Steel Corp. v. UMWA*, 534 F.2d 1063 (3d Cir.1976).[10] We think that case does not dispense with the agency requirement. Rather, it was concerned with the sufficiency of the evidence.

We hold, therefore, that as a precondition to injunctive relief against a union

---

**8.** In analyzing the definition of the term "agent" in section 301(e), Senator Taft stated:

... This restores the law of agency as it has been developed at common law.

....

... [T]he definition applies equally in the ⌐responsibility imputed to both employers and labor organizations for the acts of their officers or representatives *in the scope of their employment.*

... [U]nion business agents or stewards, *acting in their capacity of union officers,* may make their union guilty of an unfair-labor practice when they engage in conduct made an unfair-labor practice in the bill, even though no formal action has been taken by the union to authorize or approve such conduct.

93 Cong.Rec. 6859 (1947) (remarks of Sen. Taft) (emphasis added).

**9.** *Carbon Fuel Co. v. UMWA*, 444 U.S. 212, 100 S.Ct. 410, 62 L.Ed.2d 394 (1979). The Court noted that, in section 301, the common-law agency test has replaced the more restrictive test of union responsibility contained in section 6 of the Norris–LaGuardia Act, which requires "clear proof of *actual* participation in, or *actual* authorization of, such acts, or of ratification of such acts after *actual* knowledge thereof." *Id.* at 217 n. 6, 100 S.Ct. at 414 n. 6 (quoting 29 U.S.C. § 106 (1988) (emphasis supplied)). *See also UMWA v. Gibbs*, 383 U.S. 715, 736, 86 S.Ct. 1130, 1144, 16 L.Ed.2d 218 (1966).

**10.** The court upheld the propriety of a *Boys Markets* injunction, prospectively enforcing an implied no-strike agreement, against wildcat work stoppages in which essentially all members of the union participated and the union

under *Boys Markets*, a plaintiff must prove agency as required by section 301(b) and (e). *Accord Hardline Elec., Inc. v. International Bhd. of Elec. Workers, Local 1547*, 680 F.2d 622, 626 n. 4 (9th Cir.1982), *cert. denied*, 459 U.S. 1170, 103 S.Ct. 814, 74 L.Ed.2d 1013 (1983).

The district court found that the union did not instigate, support, ratify or encourage the strike. Plaintiff does not contend that these findings are clearly erroneous or legally incorrect. Thus, plaintiff was not entitled to an injunction against the union under common-law agency principles.

### MASS ACTION

The district court found that there was no mass action and plaintiff does not attack that finding on appeal. Thus, we have no occasion to consider whether it constitutes a legal basis, apart from agency, for finding a union responsible or is only *prima facie* proof of agency under section 301.[11]

### BEST EFFORTS

■ Although it is by no means clear, plaintiff seems to argue that the union officials did not use their best efforts to terminate the picketing. The district court noted that the best efforts theory of union responsibility for the unauthorized actions of its members is no longer a separate, viable theory to support injunctive relief in view of *Carbon Fuel*. *Philadelphia Marine Trade Assoc. v. Local 1291, International Longshoremen's Assoc.*, No. 89–3279, slip op. at 11 (D.N.J. Sept. 25, 1989). Thus, the district court did not make a best efforts finding. We are therefore required to pass on the correctness of the district court's ruling because, if the theory is viable, a remand for a factual finding would be in order.

We need not elaborate on the viability of best efforts as an independent theory of union responsibility because this court has held that it did not survive the Supreme Court's decision in *Carbon Fuel*. *See*

*Pittsburgh–Des Moines Steel Co. v. United Steelworkers*, 633 F.2d 302, 307 (3d Cir. 1980). Whether best efforts is still cognizable to rebut an agency inference based on proof of mass action, is thus a matter for another day.

Because plaintiff failed to establish union responsibility for the picketing, we conclude that *Boys Markets* does not apply. As the Supreme Court dictated, "A District Court entertaining an action under § 301 may not grant injunctive relief against concerted activity unless and until it decides that the case is one in which an injunction would be appropriate despite the Norris–LaGuardia Act." *Boys Markets*, 398 U.S. at 254, 90 S.Ct. at 1594. Because we find that *Boys Markets* does not apply, we have no occasion to address whether there is an arbitrable issue here or whether the principles of equity have been satisfied.

Accordingly, the order of the district court denying plaintiff's application for a preliminary injunction will be affirmed.

---

leadership exerted minimal effort to get the striking members back to work.

**11.** For a thoughtful exposition of the role of the mass action theory in establishing agency, *see*

Cureton and Kisch, *Union Liability for Illegal Strikes: The Mass Action Theory Redefined*, 87 W.Va.L.Rev. 57 (1984).