UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT


No. 96-1505

INTERNATIONAL ASSOCIATION OF MACHINISTS and AEROSPACE WORKERS,
(AFL-CIO), LOCAL 2725

Plaintiff, Appellee,

v.

CARIBE GENERAL ELECTRIC PRODUCTS, INC.,

Defendant, Appellant.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jaime Pieras, Jr., Senior U.S. District Judge] 



Before

Boudin, Circuit Judge, 

Campbell and Bownes, Senior Circuit Judges. 



Felix Benitez Colon with whom Rivera Tulla & Ferrer was on brief 
for appellant.
Luis F. Padilla for appellee. 



March 13, 1997


BOUDIN, Circuit Judge. The union, representing the 

employees of Caribe General Electric ("Caribe"), sued the

company in the district court for damages and related relief

for a refusal to arbitrate, or for an order requiring it to

arbitrate, five specific grievances under a collective

bargaining agreement. The district court ordered arbitration

as to all of the grievances, ruling that the arbitrator

should determine whether the grievances were arbitrable. We

hold that this was a matter for the court to decide and

remand as to four of the grievances for further proceedings.

The facts of importance to this appeal are undisputed.

Caribe and its union had a collective bargaining agreement

which, as most do, contained many substantive provisions, a

grievance procedure, and an arbitration provision providing

for mandatory arbitration of specified categories of

disputes. During the term of this agreement, Caribe took

five different actions that caused the union to invoke the

grievance procedure and, when that did not resolve matters,

to demand arbitration. Three of the grievances grew out of

one episode: Ibrahim Rosario, Herminio L pez, and Esteban

Calder n were group leaders of three separate departments.

The company eliminated one of the departments, integrating

its functions into the other two; it then re-assigned L pez

and Calder n as group leaders of the enlarged departments,

and retained Rosario but without a leadership post. The

-2- -2-

fourth grievance concerned Antonio V zquez, who had been a

dispatcher; Caribe eliminated that position, reallocated some

of the duties to a shipping clerk, and left V zquez in a

lower job classification. The fifth grievance involved the

temporary assignment of Narciso Torr ns for more than 30 days

to perform the tasks of two assembly workers who were

consecutively on vacation. 

When the grievance procedure failed to resolve matters

and Caribe refused arbitration, the union brought suit in the

district court under 29 U.S.C. 185, claiming inter alia 

that the grievances were subject to mandatory arbitration and

that the company should be required to proceed with

arbitration. On cross-motions for summary judgment, the

district court ruled that the five grievances were arguably

subject to mandatory arbitration and that the arbitrator

should resolve this issue.

Caribe has appealed the judgment as to four of the

grievances, agreeing that the Torr ns matter should be

arbitrated. Conversely, the union now concedes that the

district court was mistaken in referring the issue of

arbitrability to the arbitrator; but it says that all five

grievances are subject to mandatory arbitration and that the

order to arbitrate should be affirmed outright on this

alternative ground.

-3- -3-

Labor arbitration depends upon contract, AT&T 

Technologies, Inc. v. Communications Workers, 475 U.S. 643, 

648 (1986); Tejidos de Coamo, Inc. v. ILGWU, 22 F.3d 8, 12 

(1st Cir. 1994), and the collective bargaining agreement

("CBA") in this case provides for mandatory arbitration only

in certain categories of cases, including "[t]he claimed

violation of a specific provision or provisions" of the

agreement. CBA art. XXXIV, 6(a). But even if a grievance

falls within this category, it is excluded from mandatory

arbitration by section 7 of the same article under certain

conditions, such as where the grievance

(f) Would require an arbitrator to consider, rule
on or decide any of the following: 

(1) The elements of an employee's job
assignment;

(2) The title or other designations of an
employee's job classification;

(3) The right of management to assign or
reassign work or elements of work.

The Supreme Court has held that "[u]nless the parties

clearly and unmistakably provide otherwise, the question of

whether the parties agreed to arbitrate is to be decided by

the court, not the arbitrator." AT&T Technologies, 475 U.S. 

at 649. Here, far from agreeing to leave the arbitrability

issue to the arbitrator, the parties provided in their

agreement that in the event of a dispute on this issue,

arbitration may proceed "only after a final [judgment] of a

-4- -4-

Court has determined that the grievance . . . raises

arbitrable issues." CBA art. XXXIV, 4(a).

Thus, we agree with both parties that the district court

went astray in ordering arbitration without first deciding

itself that each grievance was subject to mandatory

arbitration. To do so, the court had to decide that the

grievance fell within a provision for mandatory arbitration

(e.g., section 6) and was not excluded by any other limiting 

provision (e.g., section 7). We turn, therefore, to the 

union's request that we decide the issue of arbitrability

ourselves and affirm the district court's arbitration order.

Since the union has not supplied us with the grievances,

it is very hard to tell whether each one rests on a colorable

claim that a specific provision of the agreement has been

violated, as required by section 6. But even with that

information, we could not determine without more information

whether arbitration of each grievance would "require an

arbitrator to consider, rule on or decide" one of the

enumerated subjects that section 7(f) excludes from mandatory

arbitration. For the same reason, Caribe's alternative

request that we direct summary judgment in its favor is

without merit.

While a remand for further proceedings is necessary, a

further word or two may be helpful to the court on remand.

Caribe has not limited its claim of non-arbitrability to

-5- -5-

section 7(f) but has also invoked other grounds of objection;

section 7(e) of the same article, which Caribe has cited on

appeal, is a close companion to section 7(f) and might need

attention. But we are concerned about Caribe's repeated

invocation of two "management rights" provisions as shields

against mandatory arbitration.

One is the basic "management rights" provision, in an

article unrelated to arbitration, which seems to us wholly

beside the point. CBA art. IV. That provision reserves

management rights broadly over a range of potentially

pertinent subjects--such as reallocation of work--but the

management rights are retained "subject only to those

provisions of this Agreement which expressly qualify this

right." Given this "subject . . . to" proviso, we are

baffled as to why Caribe thinks this management rights

provision has any relevance. 

The union's grievance claims may seem obscure; but to

the extent they rest upon the violation of specific

provisions, we seriously doubt that the article IV

"management rights" clause could be read either to negate

those provisions or to restrict arbitration. See CBA art. 

XXXIV, 4(b)(4); United Steelworkers v. Warrior & Gulf 

Navigation Co., 363 U.S. 574, 584-85 (1960). The parties are 

welcome to argue this issue on remand, if Caribe chooses to

press it, but we do not think the company should be unduly

-6- -6-

encouraged by its earlier success in International Assoc. of 

Machinists & Aerospace Workers v. General Elec. Co., No. 89- 

1115JP, 1990 WL 29806 (D.P.R. 1990), which was not appealed.

The arbitration article itself contains a second,

somewhat less detailed reservation of management rights, CBA

art. XXXIV, 4(b)(4), but it too appears to permit mandatory

arbitration--if otherwise provided--so long as the grievance

is based on an express limitation in the agreement and is not

subject to section 7's exclusions. See id. ("[T]he parties 

have not agreed to arbitrate demands which challenge action

taken by the company in the exercise of any [management]

rights, except where such challenge is based upon a violation 

of any such expressed limitations (other than those set out 

in Section 7 of this Article XXXIV).") (emphasis added). 

On remand, we suggest that the district court consider

on a grievance-by-grievance basis whether--as to each of the

four remaining grievances--the grievance (1) is based upon a

colorable claim that the company's action violated one or

more specific provisions of the agreement and (2) is not

excluded from mandatory arbitration by one or more of the

exclusions of section 7. Unless both conditions are

satisfied, it appears that mandatory arbitration cannot be

ordered, so the district court may not need to rule on both

conditions.

-7- -7-

There may be other bases for, or limitations on,

mandatory arbitration that we have overlooked; but we

encourage the parties to help the district court focus the

issues. As already noted, we doubt that the management-

rights reservations are pertinent. And it certainly does not

help for the union to invoke the Supreme Court's default

presumption in favor of arbitration where, as here, the

collective bargaining agreement explicitly negates the

presumption. CBA Art. XXXIV, 4(b)(5); AT&T Technologies, 

475 U.S. at 650.

Finally, it is worth emphasizing that the issue before

the district court on remand in this case is not the merits

of the grievances; it is simply whether they are subject to

mandatory arbitration. All that the union complained of in

this case was the failure to afford mandatory arbitration,

and that is the only issue before us or the district court.

AT&T Technologies, 475 U.S. at 649-50. Needless to say, even 

if a grievance is excluded from mandatory arbitration, the

union is not necessarily without contractual remedies for an

alleged violation of the agreement. Cf. Vaca v. Sipes, 386 

U.S. 171, 184 n.9 (1967).

The order of the district court is therefore affirmed as 

to the Torr ns grievance but modified to require arbitration 

on the merits, the company having agreed that this grievance

is arbitrable. The order requiring arbitration is vacated as 

-8- -8-

to the other four grievances and remanded for further 

proceedings not inconsistent with this decision.

It is so ordered. 

-9- -9-