PRITCHARD ELECTRIC COMPANY, INC., a West Virginia corporation, Plaintiff,

v.

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 317, Defendant.

No. CIV.A. 3:04–0057.

United States District Court, S.D. West Virginia, Huntington Division.

March 2, 2004.

Scott K. Sheets, Huddleston Bolen Beatty Porter & Copen, Huntington, WV, for Plaintiff.

Charles F. Donnelly, Donnelly & Carbone, Charleston, WV, for Defendant.

## ORDER

CHAMBERS, District Judge.

At a hearing conducted on February 13, 2004, this Court **DENIED** Plaintiff's motion for a preliminary injunction. The Order more fully sets forth the Court's rationale.

### I. Factual Background

Defendant International Brotherhood of Electrical Workers Local 317 ("Local 317")

is the bargaining unit for the employees of Plaintiff Pritchard Electric Company, Inc. ("Pritchard"). Pritchard and Local 317 are parties to two collective bargaining agreements: the General Presidents' Projects Maintenance Agreement ("the GPMA") and an Inside Agreement. The GPMA is a national contract between Pritchard and various international unions, including the IBEW. The Inside Agreement, on the other hand, is a general collective bargaining agreement between Local 317 and several electrical contractors, including Pritchard.

According to Pritchard's verified complaint, on July 23, 2003, Pritchard terminated the employment of Jonathan Daniels, a Local 317 member employed by Pritchard to perform maintenance work at Marathon Ashland Petroleum, for whom Pritchard is an electrical service contractor. Four days later, Local 317 filed a grievance on behalf of Daniels, citing the GPMA as the basis of its claim that Daniels was wrongfully terminated. Under the terms of the GPMA, grievances are to be resolved through a four-step process. The Daniels grievance progressed through the first two of these steps but prior to a hearing before the General Presidents' Committee (the third step in the GPMA process), Local 317 requested an abeyance so that it could pursue a remedy through the Joint Apprenticeship and Training Committee ("JATC"). The General Presidents' Committee agreed to stay its hearing, which had been scheduled for September 16, 2003, and Local 317 filed a grievance with the JATC pursuant to the terms of the Inside Agreement.

The JATC "deadlocked" over the proper resolution of the grievance. Continuing to follow the procedure outlined in the Inside Agreement, Local 317 filed a grievance with the Labor–Management Committee on December 5, 2003. On December 30, 2003, the General Presidents' Committee rescheduled the GPMA Step III hearing for January 16, 2004. On January 5, the Labor–Management Committee met and deadlocked on the grievance before it. On January 9, the General Presidents' Committee canceled the Step III hearing that had been scheduled, allegedly upon representations by the IBEW's general president that the dispute was being resolved under the terms of the Inside Agreement. On January 13, Local 317, again acting pursuant to the Inside Agreement, filed a grievance with the Council on Industrial Relations ("CIR").

After the CIR scheduled a hearing on Local 317's grievance for February 16, 2004, Pritchard filed the instant action in this Court, invoking Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Pritchard seeks injunctive and declaratory relief prohibiting Local 317 from arbitrating this dispute through the Inside Agreement process. Instead, Pritchard argues that the grievance filed on Daniels' behalf is subject only to the arbitration provisions of the GPMA, and that Pritchard will suffer irreparable harm if it is forced to arbitrate in the wrong forum. The Court conducted a hearing on Pritchard's motion for a preliminary injunction on February 13, 2004.

## II. Analysis

■ Usually, an opinion granting or denying a motion for a preliminary injunction begins with a recitation of the familiar four elements a federal court must consider in determining whether injunctive relief is warranted.[1] In this case, however, Local 317's opposition to the issuance of an injunction is grounded in the Norris–La-

---

1. See *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir.1991) (in determining whether to grant a preliminary injunction, a district court must consider "(1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is de-

Guardia Act, 29 U.S.C. § 101 *et seq.* ("the NLA"), which Local 317 argues prohibits the Court from granting Pritchard a preliminary injunction.[2]

▮ "The enactment of the Norris–LaGuardia Act in 1932 culminated a sustained campaign to eliminate anti-union injunctions in the federal courts." Arthur S. Leonard, *Specific Performance of Collective Bargaining Agreements,* 52 Fordham L.Rev. 193, 203 (1983). In passing the NLA, Congress' intent was to counteract "judicial hostility towards collective action by employees" that had limited the effectiveness of earlier labor laws such as the Clayton Act. *Id.* at 204. Through the NLA, Congress sought "to protect the rights of laboring men [and women] to organize and bargain collectively and to withdraw federal courts from a type of controversy for which many believed they were ill-suited and from participation in which, it was feared, judicial prestige might suffer." *Marine Cooks & Stewards v. Panama S.S. Co.,* 362 U.S. 365, 369 n. 7, 80 S.Ct. 779, 4 L.Ed.2d 797 (1960).

## A. The Applicability of the Norris–LaGuardia Act

▮ Several provisions of the NLA are relevant in determining whether this Court may issue an injunction barring Local 317 from utilizing the Inside Agreement grievance procedures. Section 1 of the NLA is relatively unequivocal in its terms:

No Court of the United States ... shall have jurisdiction to enter any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in strict

conformity with the provisions of this Act; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this Act.

29 U.S.C. § 101. Thus, this Court's first task is to determine whether the instant dispute "involve[s] or grow[s] out of a labor dispute." If it does, Pritchard will be entitled to injunctive relief only if Pritchard can satisfy the stringent requirement of sections 7 and 8 of the NLA, 29 U.S.C. §§ 107–08.

Section 13 of the NLA defines the phrase "involving or growing out of a labor dispute." It provides in pertinent part:

A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft, or occupation; or have direct or indirect interests therein; or who are employees of the same employer; or who are members of the same or an affiliated organization of employers or employees; whether such dispute is (1) between one or more employers or associations of employers and one or more employees or associations of employees; (2) between one or more employers or associations of employers and one or more employers or associations of employers; or (3) between one or more employees or associations of employees and one or more employees or associations of employees; or when the case involves any conflicting or competing interests in a "labor dispute" (as hereinafter defined) of "persons participating or interested" therein (as hereinafter defined).

---

nied, (2) the likelihood of harm to the defendant if the requested relief is granted, (3) the likelihood that the plaintiff will succeed on the merits, and (4) the public interest").

**2.** Local 317 casts its argument as one that challenges this Court's subject matter juris-

diction. However, the Norris–LaGuardia Act only limits the equitable power of federal courts to grant certain relief, which is an issue separate from whether a court has jurisdiction to adjudicate a controversy. *See Avco Corp. v. Aero Lodge No. 735,* 390 U.S. 557, 560–61, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968).

29 U.S.C. § 113(a). Section 13 goes on to define "labor dispute" as "any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee." 29 U.S.C. § 113(c).

If Pritchard's motion for a preliminary injunction is viewed narrowly-that is, as seeking to enjoin a pending arbitration between union and employer-it certainly is encompassed by the NLA. While neither the Fourth Circuit nor any district court within it has addressed the issue, five courts of appeals have concluded that the NLA deprives district courts of the authority to issue an injunction halting a pending arbitration that arises from the labor context. *See AT & T Broadband v. IBEW Local 21*, 317 F.3d 758 (7th Cir. 2003); *Tejidos de Coamo, Inc. v. Int'l Ladies' Garment Workers' Union*, 22 F.3d 8 (1st Cir.1994); *Lukens Steel Co. v. United Steelworkers*, 989 F.2d 668 (3d Cir.1993); *Camping Constr. Co. v. Iron Workers*, 915 F.2d 1333 (9th Cir.1990); *In re Marine Engineers Beneficial Ass'n*, 723 F.2d 70 (D.C.Cir.1983). Pritchard argues, however, that the Court should examine the effect of its motion rather than its form.

Essentially, Pritchard contends that if it is ultimately successful in this action, the injunctive relief this Court would provide would result in forcing Local 317 to arbitrate in the GPMC Step III proceeding rather than before the CIR; following Pritchard's approach, then, the Court would view the instant motion as one to compel arbitration rather than as one to enjoin a pending arbitration.

To many, Pritchard's distinction will likely appear semantic and of little consequence. This is not the case, however, because the Supreme Court has interpreted section 301 of the Labor Management Relations Act ("the LMRA") to permit a district court to compel arbitration under certain circumstances.[3] The LMRA provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). Because section 301 of the LMRA was passed subsequent to the Norris–LaGuardia Act, the Supreme Court has interpreted the LMRA as limiting the phrase "labor dispute" as it is used in the NLA.[4] If Pritchard's requested relief can

---

**3.** Section 301 of the LMRA is "designed to permit more liberal enforcement of collective bargaining contracts" and to promote "a higher degree of responsibility upon the parties to such agreements." *Niagara Hooker Employees Union v. Occidental Chem. Corp.*, 935 F.2d 1370, 1375 (2d Cir.1991).

**4.** Some courts view section 301 and Supreme Court cases interpreting it as creating an exception to the NLA's anti-injunction provision even where a matter is a "labor dispute" as defined in section 13 of the NLA. *See, e.g., Lukens Steel Co.*, 989 F.2d at 676–79 (inquir-

ing first as to whether the matter is a "labor dispute" and then determining whether it fits within "an exception" to the NLA). The Fourth Circuit, however, construes section 301 as requiring courts to "look beyond the literal language of [29 U.S.C.] § 113(c) to the historical context in which Norris–LaGuardia was enacted to examine the types of abuses that the Act was designed to guard against." *District 29, UMWA v. New Beckley Mining Corp.*, 895 F.2d 942, 945 (4th Cir.1990). In *New Beckley Mining*, the Fourth Circuit describes a *"Boys Markets* injunction" as an exception to the NLA, but the *New Beckley*

be construed as fitting within the limited authority conferred by section 301, then the Court need not concern itself with the mandates of sections 7 and 8 of the NLA.

An understanding of two Supreme Court cases is needed in order to define the injunctive power conferred on a district court by section 301. The first is *Textile Workers Union v. Lincoln Mills of Alabama*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), in which the Court held that the NLA did not deprive a district court of the jurisdiction to enter an injunction requiring an employer to submit to arbitration. In explaining its reasoning, the Court stated:

> The question remains whether jurisdiction to compel arbitration of grievance disputes is withdrawn by the Norris–LaGuardia Act. Section 7 of that Act prescribes stiff procedural requirements for issuing an injunction in a labor dispute. The kinds of acts which had given rise to abuse of the power to enjoin are listed in § 4. The failure to arbitrate was not a part and parcel of the abuses against which the Act was aimed. Section 8 of the Norris–LaGuardia Act does, indeed, indicate a congressional policy toward settlement of labor disputes by arbitration ... Though a literal reading might bring the dispute within the terms of the Act, we see no justification in policy for restricting § 301(a) to damage suits, leaving specific performance of a contract to arbitrate grievance disputes to the inapposite procedural requirements of the Act.

*Id.* at 457–58, 77 S.Ct. 912. Subsequently, the Supreme Court expanded the holding of *Lincoln Mills* in *Boys Markets, Inc. v. Retail Clerks Union Local 770*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). In *Boys Markets*, the Court considered a request for an injunction against a union that had begun a work stoppage in apparent violation of grievance and arbitration provisions in a collective bargaining agreement. The Court determined that in such a case, a district court was not bound by the procedural requirement of section 7 of the NLA, holding "that the unavailability of equitable relief in the arbitration context presents a serious impediment to the congressional policy favoring the voluntary establishment of a mechanism for the peaceful resolution of labor disputes, [and] that the core purpose of the Norris–LaGuardia Act is not sacrificed by the limited use of equitable remedies to further this important policy." *Id.* at 253, 90 S.Ct. 1583.

Thus, this Court finds itself with a case that does not fall squarely either within the circumstances in which an injunction is clearly available under Supreme Court precedents[5] or within that line of cases, beginning with *In re Marine Engineers Beneficial Ass'n*, that have held that an injunction is clearly unavailable. While the two situations presented in those cases will yield opposite results when an aggrieved party seeks an injunction, they are linked by a common thread: in both types of cases, the court's decision will determine whether a particular dispute will be arbi-

*Mining* court did not view such an injunction as a product of section 301.

**5.** Since *Boys Markets,* a number of courts have made clear that an injunction may issue in a "reverse-*Boys Markets* case." *See* Michael A. Berenson, *Labor Injunctions Pending Arbitration: A Proposal to Amend Norris–LaGuardia,* 63 Tul. L.Rev. 1681, 1695 (1989) ("A

reverse-*Boys Markets* case is one in which the union brings an action against the employer to restrain some conduct allegedly injurious to the union or the employees. A common example is a union suit to prevent the employer from closing a plant or selling a store without submitting to arbitration the question whether the employer may do so without union approval.").

trated. In a *Boys Markets* or *Lincoln Mills* case, the dispute would not be arbitrated but for an injunction. In cases such as *Lukens Steel* and *Tejidos de Coamo*, on the other hand, a dispute will be arbitrated unless a court enjoins a pending arbitration. In the instant case, though, the dispute between Pritchard and Local 317 will be arbitrated regardless of whether this Court issues an injunction; this Court is asked merely to decide which arbitral forum is the proper one.

Clearly, the literal terms of the NLA make the subject matter of the disagreement between Pritchard and Local 317 a "labor dispute." The Seventh Circuit has noted:

> We grant that arbitration is a dispute-*resolution* mechanism, not an independent labor dispute. Still, the statutory question is whether employer and union are engaged in a dispute "concerning terms or conditions of employment" (and so on); if yes, then a court may not issue an injunction in "a case involving or growing out of" that underlying "labor dispute." [The employer] and the [union] are engaged in a "labor dispute" as § 13 defines that term. That the arbitration is not *itself* a "labor dispute" does not make this suit less one "growing out of" a labor dispute. Otherwise one might as well observe that a *strike* is not a "labor dispute" (it is not in § 13's list) and contend that it is therefore proper to enjoin work stoppages. Yet a strike or lockout, like arbitration, may arise from a labor dispute, and this connection brings both within the scope of § 1.

*AT & T Broadband*, 317 F.3d at 760 (citations omitted). But that cannot end the inquiry, as this Court must look beyond the NLA's "literal language" to determine whether an injunction could still be issued consistent with its "historical context."

*New Beckley Mining Corp.*, 895 F.2d at 945.

An examination of the principles enunciated in *Lincoln Mills, Boys Markets,* and their progeny reveals that the Supreme Court has interpreted section 301 of the LMRA as permitting injunctive relief over the express prohibition of the NLA only where two criteria are met: first, that the type of dispute that the district court's injunction would resolve is not "a part and parcel of the abuses against which the Act was aimed,"[6] and second, that the injunction would be consistent with congressional policy favoring arbitration. As the Supreme Court has explained,

> The driving force behind *Boys Markets* was to implement the strong congressional preference for the private dispute settlement mechanisms agreed upon by the parties. Only to that extent was it held necessary to accommodate § 4 of the Norris–LaGuardia Act to § 301 of the Labor Management Relations Act and to lift the former's ban against the issuance of injunctions in labor disputes.

*Buffalo Forge Co. v. United Steelworkers,* 428 U.S. 397, 407, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976). Pritchard relies heavily on the dissenting opinion in *Lukens Steel,* in which Judge Cowen argued, "In the context of the NLA, there is no principled distinction between an action to compel arbitration and an action to enjoin arbitration." 989 F.2d at 680 (Cowen, J., dissenting). This Court respectfully disagrees with Judge Cowen's analysis. The Supreme Court has recognized the limited authority of district courts to compel arbitration in labor disputes because such power is necessary to reconcile the arguably competing interests of the NLA (precluding judicial intervention in labor disputes) and the LMRA (favoring peaceful resolution of labor disputes through arbitration).

---

**6.** *See Lincoln Mills,* 353 U.S. at 457, 77 S.Ct. 912.

While Judge Cohen feared that "the potential for waste of time and money [resulting from a wrongfully arbitrated dispute] would make employers and unions alike more reluctant to enter into arbitration agreements in the first place," this was not an evil that either the NLA or the LMRA was enacted to prevent. While early judicial intervention to determine arbitrability of labor disputes might be sound policy, it is not a policy that Congress has chosen to codify.[7]

In the instant dispute, the Court can quickly concede that the dispute between Pritchard and Local 317 is not the type of abuse that the NLA was drafted to remedy. *See, e.g., Milk Wagon Drivers' Union v. Lake Valley Farm Prods.,* 311 U.S. 91, 102, 61 S.Ct. 122, 85 L.Ed. 63 (1940) (describing the historical context in which the NLA was enacted). If the primary mischief during the labor struggles of the early part of the twentieth century was that employers and unions were attempting to resolve their disputes in an improper arbitral forum, it is doubtful that Congress would have enacted legislation as sweeping as the NLA. Nonetheless, the Supreme Court in *Boys Markets* and its progeny made clear that a district court could only issue an injunction if doing so would promote national policy favoring the arbitration of labor disputes. In this case, the Court cannot conclude that preventing one arbitration so that another can proceed promotes the arbitrability of labor disputes. Such an action certainly would not hinder congressional policy, but failing to hinder something is not the same as promoting that thing.

■ This Court's conclusion is buttressed by Fourth Circuit cases requiring district courts to comply with sections 7 and 8 of the NLA in entering preliminary injunctions enforcing arbitration awards. *See District 17, UMWA v. Apogee Coal Co.,* 13 F.3d 134 (4th Cir.1993); *District 17, UMWA v. A & M Trucking, Inc.,* 991 F.2d 108 (4th Cir.1993). If the NLA applies to the enforcement of the resolution of a dispute ordered by an arbitration that has already concluded, the Court cannot find a distinction that would permit an injunction, absent satisfaction of the NLA, determining the arbitral forum to which the parties need apply for that resolution in the first place. "The Supreme Court has emphasized that the critical element in determining whether the provisions of the Norris–LaGuardia Act apply is whether the employer-employee relationship [is] the matrix of the controversy." *New Beckley Mining Corp.,* 895 F.2d at 946 (quoting *Jacksonville Bulk Terminals v. Int'l Longshoremen's Ass'n,* 457 U.S. 702, 712–13, 102 S.Ct. 2672, 73 L.Ed.2d 327 (1982)). The Fourth Circuit has permitted the issuance of an injunction requiring arbitration only where failing to preserve the

---

7. Pritchard cites *AT & T Technologies Inc. v. Communications Workers of America,* 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), for the proposition that whether a dispute is arbitrable is an issue for judicial determination. This Court believes, however, that *AT & T* stands merely for the proposition that arbitration will not be compelled unless a prior determination is made by the court as to its arbitrability. *See, e.g., Lukens Steel,* 989 F.2d at 679 ("Our review of the *AT & T* decision reveals that the Supreme Court did not expand on its prior holdings and did not

state or imply that an arbitration proceeding should be enjoined until a determination as to arbitrability is made."). The Fourth Circuit's decision in *A.T. Massey Coal Co. v. International Union, UMWA,* 799 F.2d 142 (4th Cir. 1986) does not compel a different conclusion. The Supreme Court has recently affirmed that *AT & T Technologies* is to be read narrowly. *See Green Tree Fin. Corp. v. Bazzle,* 539 U.S. 444, 123 S.Ct. 2402, 2407, 156 L.Ed.2d 414 (2003) (holding that question of "what *kind of arbitration proceeding* the parties agreed to" is not subject to judicial determination prior to arbitration).

status quo would make future relief through arbitration or a suit for damages impossible or impracticable. *See, e.g., Columbia Local, Am. Postal Workers Union v. Bolger,* 621 F.2d 615, 616–17 (1980) (employer was implementing changes to mail handling process that resulted in the elimination of several jobs); *Drivers, Chauffeurs, Local 71 v. Akers Motor Lines, Inc.,* 582 F.2d 1336, 1341 (4th Cir.1978) (employer was liquidating its assets); *Lever Bros. v. Int'l Chem. Workers Union,* 554 F.2d 115, 117 (4th Cir.1976) (employer was transferring its operations from Maryland to Indiana). In the instant case, however, the preservation of the status quo is not necessary to the preservation of Pritchard's ability to recover from Local 317's allegedly wrongful conduct. If Pritchard loses in the arbitration before the CIR, it can refuse to honor the CIR's award, in which case Local 317 would file suit seeking to enforce the award.[8] Pritchard would remain able to raise all of the defenses to the arbitration award that it seeks to raise in support of its instant motion for a preliminary injunction. Because a preliminary injunction is an extraordinary remedy-made even more extraordinary in the labor context by the NLA-a party may not seek one merely because judicial intervention is viewed as more efficient.

Therefore, the Court concludes that the dispute between Pritchard and Local 317 is a "labor dispute" within the meaning of the NLA and does not fit within that class of cases in which Congress has nevertheless permitted district courts to issue an injunction in order to further the policy of peaceful settlement of labor disputes. As such, this Court may only grant Pritchard's motion in "strict conformity" with the provisions of the NLA.

### B. Application of the Norris–LaGuardia Act

■ Section 4 of the NLA categorically prohibits a district court from providing injunctive relief that would prevent a person in a labor dispute from performing or participating in nine specific acts. Although the instant dispute does not touch upon an activity enumerated in section 4, two provisions of the NLA set forth the only conditions in which an injunction may be issued. Section 7 requires that before the issuance of an injunction, a court take testimony and allow for cross examination at a hearing adequate notice of which has been given to the respondent. Further, injunctive relief may issue only if the court finds:

(a) That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained, but no injunction or temporary restraining order shall be issued on account of any threat or unlawful act excepting against the person or persons, association, or organization making the threat or committing the unlawful act or actually authorizing or ratifying the same after actual knowledge thereof;

(b) That substantial and irreparable injury to complainant's property will follow;

(c) That as to each item of relief granted greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by the granting of relief;

---

8. In fact, Pritchard may yet get the result it seeks from this Court. As the *Tejidos de Coamo* court noted, although injunctive relief is unavailable, the underlying action for declaratory judgment remains. 22 F.3d at 15. Thus, assuming the February 16 CIR proceeding does not terminate in Pritchard's favor (thus mooting the controversy), this Court could, perhaps, enter a declaratory judgment that the GPMA governs the Daniels grievance, thereby rendering a CIR award to Local 317 unenforceable.

(d) That complainant has no adequate remedy at law; and

(e) That the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection.

29 U.S.C. § 107. Finally, section 8 of the NLA requires that before obtaining injunctive relief, a complainant must "comply with any obligation imposed by law which is involved in the labor dispute in question ... [and] make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration." 29 U.S.C. § 108.

■ The Court concludes that Pritchard cannot satisfy the first element of an NLA-authorized injunction, as no "unlawful act" has been threatened. Given the history of the NLA, an "unlawful act" must be more than merely a breach of contract or a tortious act. *See, e.g., New Negro Alliance v. Sanitary Grocery Co.,* 303 U.S. 552, 562–63, 58 S.Ct. 703, 82 L.Ed. 1012 (1938) (through NLA, Congress intended "that, short of fraud, breach of the peace, violence, or conduct otherwise unlawful, those having a direct or indirect interest in such terms and conditions of employment should be at liberty to advertise and disseminate facts and information with respect to terms and conditions of employment, and peacefully to persuade others to concur in their views respecting an employer's practices"); *Philadelphia Marine Trade Ass'n v. Local 1291, Int'l Longshoremen's Ass'n,* 909 F.2d 754, 757 n. 7 (3d Cir.1990) (finding "no authority for equating breach of peace with unlawful act"). To include a garden variety breach of contract into the NLA's "unlawful acts" requirement would render the statutory requirements for an injunction superfluous. Further, even assuming that Local 317's actions in this case are a breach of contract and additionally assuming that such a breach is an unlawful act as used in section 7, the Court cannot discern how arbitrating in the wrong forum will "substantially and irreparably harm" Pritchard's "property." In its memoranda supporting its motion, Pritchard writes at length of the harm to Pritchard's reputation that will result if Pritchard loses an arbitration that never should have taken place. Such an ephemeral injury is clearly not of the type contemplated by section 7. Finally, even taking the quantum leap of assuming that Pritchard could meet all the criteria of section 7, Pritchard has failed to comply with section 8, which requires it to "make every effort to settle" its dispute through negotiation, which includes "voluntary arbitration." To the contrary, Pritchard seeks to avoid resolution of the instant dispute-the proper forum for arbitration-through arbitration. In this case, the plain language of section 8 would require that Pritchard submit its argument disputing the validity of the CIR as an arbitral forum to the CIR. Pritchard has advanced no allegation that explains why the CIR is unqualified to make a judgment on such an issue. Thus, the Court concludes that sections 7 and 8 of the NLA bar injunctive relief in this case.

## III. Conclusion

The instant matter requires the Court to determine how to reconcile federal policy in favor of arbitration with federal policy in opposition to judicial intervention in labor disputes. Because the Court concludes that an injunction would not advance Congress' goal of fostering arbitration of labor disputes, the latter policy goal must necessarily prevail. Therefore, because 29 U.S.C. §§ 107–08 clearly bar injunctive relief, Pritchard's motion for a preliminary injunction must be **DENIED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record

and any unrepresented parties, and **DI-RECTS** the Clerk to publish this opinion on the Court's website.